STATE OF NORTH CAROLINA v. HOWARD LEE ALSTON

No. 176A81

(Filed 11 January 1983)

1. **Criminal Law § 73; Homicide § 17— victim's statement about argument with defendant—exception to hearsay rule—relevancy to show ill will, motive, etc.**

    In a prosecution for two murders, testimony that one of the victims had told the sheriff two days before the murders that he and the defendant had engaged in a serious argument because he had told defendant to stop selling drugs in the parking lot of his store and that he was afraid that he would have serious trouble with defendant came within an exception to the hearsay rule since (1) the death of the victim provided the necessity for the testimony, and (2) there was a reasonable probability that the victim's statement was truthful because it was in the form of a report by a store owner of alleged criminal activity and resulting ill will by defendant toward the owner. Furthermore, the testimony was relevant for the limited purpose of showing ill will between the victim and the defendant and as tending to show a resulting motive, intent, malice, premeditation and deliberation on the part of defendant.

2. **Bills of Discovery § 6— failure to comply with discovery order—sanctions—discretion of court**

    Which sanction provided by G.S. 15A-910, if any, is the appropriate response to a party's failure to comply with a discovery order is entirely within the sound discretion of the trial court, and the decision of the trial court will not be reversed absent a showing of abuse of that discretion.

3. **Bills of Discovery § 6— failure to comply with discovery order—informing court of unfair surprise**

    When the court is not informed of any potential unfair surprise from the State's failure to comply with a discovery order, the defendant cannot properly

contend that the trial court's failure to impose a sanction is an abuse of discretion.

**4. Criminal Law § 117.1— prior consistent statements—instructions on corroborating evidence not expression of opinion**

The trial court's instructions on corroborating evidence which placed the onus on the jury to determine whether prior statements of two State's witnesses were consistent with the trial testimony of the witnesses did not constitute an expression of opinion that the witnesses gave testimony at trial which was consistent with their earlier statements.

**5. Criminal Law § 89.2— corroborative evidence—sufficiency of limiting instructions**

The trial court's instructions concerning corroboration given immediately before and after the testimony of various witnesses were sufficient to indicate to the jury the witness to whom the corroborative evidence was to relate and did not permit the jury to use the evidence to corroborate any previous witness rather than only the testimony of the witness who made the statement.

**6. Constitutional Law § 30; Bills of Discovery § 6— names and statements of witnesses not subject to discovery**

The trial court did not have the authority to order the State to disclose to defendant either the names of the State's witnesses or the statements of all persons interrogated or interviewed during the investigation. G.S. 15A-903(d); G.S. 15A-904(a).

**7. Constitutional Law § 30; Bills of Discovery § 6— investigative files of the State—names of investigating officers—no right of discovery**

No statutory provision or constitutional principle required the trial court to order the State to make available to the defendant all of its investigative files relating to defendant's case or the names of all agents who participated in the investigation. G.S. 15A-903(d).

**8. Constitutional Law § 30; Bills of Discovery § 6— criminal records of State's witnesses not discoverable**

The State was not required by statute or by due process to disclose to defendant the criminal records of its witnesses.

**9. Constitutional Law § 30; Bills of Discovery § 6— disclosure of benefits promised to any witness—failure to show noncompliance by State**

In a prosecution for two murders, testimony by a witness that she worked for the son of one of the victims, that she usually earned $3.50 an hour, and that her last paycheck was in the amount of $182.82 for less than one week's work did not establish that the State had not complied with defendant's pretrial motion for disclosure of all agreements, rewards or benefits promised to any witness for his or her testimony, since it was not clear that the witness was being rewarded or compensated in any way for her testimony, and there was no indication that the State was in any way involved with or even aware of any variance in the witness's pay for the period in question.

**10. Criminal Law § 89.6— receipt from clerk's office—inadmissibility for impeachment—admission as harmless error**

In a prosecution for two murders, a receipt issued by the clerk of court's office indicating a payment of $205.00 toward the costs and fine imposed against defendant in another criminal case was irrelevant and not admissible to impeach defendant's testimony that he was unemployed on the date of the murders and that the only money he had was $10.00 a week which his mother gave him since the receipt did not indicate that defendant actually paid the money himself; however, the admission of the receipt was not prejudicial to defendant where the fact of defendant's prior criminal conviction had already been disclosed to the jury and the State's witnesses had testified that no money was taken from the grocery store in which the murders took place. G.S. 15A-1443(a).

**11. Indictment and Warrant § 13.1— denial of motion for bill of particulars**

The trial court did not abuse its discretion in the denial of defendant's motion for a bill of particulars requesting "all events and circumstances surrounding the alleged homicide of [two named victims] and the defendant's alleged participation therein" since the motion did not specify items of factual information desired as required by G.S. 15A-925(b), and the granting of the motion would require the State to recite matters of evidence contrary to the provisions of G.S. 15A-925(b).

**12. Homicide § 21.5— first degree murder—second degree murder—sufficiency of evidence**

The State's evidence was sufficient to support the conviction of defendant for the first degree murder of one victim and for the second degree murder of a second victim where a State's witness testified that after hearing the sound of shots, she saw defendant coming from the direction of the first victim's store with a gun in his hand, and that defendant stated that he had killed the first victim to get him out of the way and then killed the second victim to prevent him from reporting the first killing, and the State presented evidence that the first victim and defendant had a serious argument two days before the killing because the victim had told defendant to stop selling drugs in the parking lot of the victim's store.

BEFORE *Robert H. Hobgood, Judge,* at the 17 August 1981 Criminal Session of Superior Court, FRANKLIN County. The defendant, Howard Lee Alston, was convicted by a jury of one count of first degree murder and one count of second degree murder. He was sentenced to life for the first degree murder and to a sentence of not less than twenty-five nor more than thirty years for the second degree murder conviction, to begin at the expiration of the life sentence. The defendant appeals the conviction and life sentence to this Court as a matter of right. The defendant's motion to bypass the Court of Appeals on the second degree murder was allowed 5 April 1982.

*Rufus L. Edmisten, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

*J. Henry Banks and Willie S. Darby, attorneys for defendant-appellant.*

MITCHELL, Justice.

The principal issue in this case is whether the trial court erred in allowing testimony that one of the victims told Sheriff Dement that he and the defendant had engaged in an argument two days before the shooting. For the reasons stated herein, we find no reversible error.

The evidence presented by the State tended to show that Robert Warren Foster operated a store known as R. W. Foster's Grocery in the Kearney Community in Franklin County. On 9 February 1981, Robert Foster and Jack Franklin Stainback were in Foster's store. They were last seen alive at approximately 8:35 p.m. Sometime between 8:45 and 8:55 p.m. law enforcement officials received a call that two people had been shot at R. W. Foster's Grocery. Upon arriving at the scene, Deputy Astor Bowen and Deputy Leroy Terrell discovered the bodies of Foster and Stainback. An autopsy disclosed that both victims had died from gunshot wounds inflicted from a distance of two to four feet.

The State's principal witness was Mrs. Florence Hicks, who testified as follows: On 9 February 1981 she was looking at a trailer parked directly across Highway 401 from R. W. Foster's Grocery. She had known the defendant for nine or ten years. On that night, she heard some shots and ran outside toward the store. She stopped at the post on the path to the store. She heard noises from a person named Mann coming across the highway. He was calling Faye. He yelled to Faye that the defendant, Howard Alston, had shot Mr. Bobby (referring to Robert Foster) and Jack (referring to Jack Stainback). The defendant was following Mann down the path and the defendant said that he had killed Mr. Bobby and Jack. He said he was getting Bobby out of the way but that he did not want to do anything to Jack. He said that he had to do it to Jack so he would keep his mouth shut. The defendant said that he did not take any money because he did not want any money. He had a gun in his hand at the time of these statements. The defendant told Mrs. Hicks to keep her mouth shut. The de-

fendant also stated that he had made sure that the victims were dead before he left the store.

Sheriff Dement was also a witness for the State. He testified over objection that he spoke to Foster two days before the killing. At that time Foster told Sheriff Dement that he and Alston had had an argument and that he was afraid that he would have serious trouble with the defendant.

The defendant testified in his own behalf and presented witnesses who supported his testimony. The defendant's evidence tended to show that on 9 February 1981 he went to Foster's store at approximately 1:00 p.m. to buy some beer. After he made his purchases, he left the store and went from there to Bernard Hawkins' house. He stayed at Hawkins' house until approximately 4:30 or 5:00 when he went to a pool room. He rode with his sister to his uncle's house which is about one and one-half miles from Foster's store. He arrived at his uncle's house at 7:20 or 7:25 p.m. His uncle, George Macon, was in the house when he arrived. He remained at his uncle's house until his uncle drove him home at approximately 9:00 p.m. The defendant's mother and sister were present when the defendant arrived home. The defendant took a shower and went to bed around 9:30 p.m. and did not wake up until 11:00 p.m. when the telephone rang.

The defense also offered the testimony of Clementine Alston, the daughter of Florence Hicks and the wife of the defendant's third cousin. Clementine Alston testified that she was in the room with the State's witness Florence Hicks between the hours of 8:00 and 9:00 p.m. on 9 February 1981 and did not see her mother go outside the trailer. She also testified that she did not hear any shots and that her mother never told her that she saw the defendant on that night. John Henry Hicks, the husband of Florence Hicks, testified that his wife never told him of having seen Howard Alston on the night of 9 February 1981, nor did she say that the defendant had admitted that he had killed the two victims. The defendant also offered the testimony of other residents of the trailer park who were home on the night of 9 February 1981 but did not hear any shots or yelling.

[1] The defendant first assigns as error the admission of testimony by Sheriff Dement concerning statements made by one of the victims shortly before his death. The sheriff testified over ob-

jection that Foster spoke to him about the defendant at approximately 3:00 p.m. on 7 February 1981, two days before Foster was killed. Foster described to the sheriff trouble he was having because the defendant was selling drugs in the parking lot of Foster's store. He told the sheriff that he had confronted the defendant on that day and told him to stop selling drugs and that he and the defendant had a serious argument at that time. Foster further told the sheriff that he was afraid that he would have serious trouble with the defendant Alston. The trial court admitted this testimony for limited purposes over the objection of the defendant. The State tendered similar testimony by the sheriff concerning a statement made to him by Foster approximately thirty days before Foster's death in which Foster described a previous confrontation with the defendant. The tendered testimony by the sheriff with regard to the statement purportedly made to him by the victim thirty days prior to the killing was excluded by the trial court. For the reasons set forth below, we find no error in the admission of testimony by the sheriff concerning the statement made to him by the victim/declarant, Foster, two days prior to the killing.

The testimony of the sheriff as to the contents of the statement made by Foster two days prior to the killing was introduced to prove the truth of some of the matters asserted in Foster's statement. It was introduced to show that the defendant and the victim, Foster, had a serious argument two days before Foster was killed. The sheriff's testimony in this regard was hearsay evidence and as such was not admissible unless within the parameters of an exception to the hearsay rule. In *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971), we held that hearsay testimony is admissible when two factors are shown to exist: (1) necessity, and (2) a reasonable probability of truthfulness. As in *Vestal*, the death of the victim/declarant in the present case meets the necessity requirement. Thus, we turn to a consideration of the reasonable probability of truthfulness of the victim's statement which is the second factor to be considered under the authority of *Vestal*.

In considering the factor of the reasonable probability of truthfulness in *Vestal*, we held that the victim's statements to his wife concerning the destination of his business trip and his traveling companion were part of the everyday routine and orderly ar-

rangement of one's domestic and business affairs. Because of the nature of these statements by the victim in *Vestal,* this Court held that the statements presented a sufficient probability of truthfulness to be admissible in evidence. In the present case, the statement by the victim Foster was in the form of a report by a store owner of alleged criminal activity and resulting ill will by the defendant toward the store owner two days before the store owner was shot dead. The statement also indicated that the argument between the defendant and the victim occurred at the same store at which the murders were committed. Such facts standing alone do not, of course, guarantee that the statements made to Sheriff Dement by Foster shortly before his death were true. They do, however, indicate a reasonable probability of truthfulness by the victim/declarant, with the ultimate issue of truthfulness to be determined by the jury.

In *Vestal,* we recognized that statements made by one spouse to another as to the destination of and traveling companions on a business trip may not always be true. Having recognized the possibility of falsity of such statements, however, this Court found a reasonable probability of truthfulness of such statements. *State v. Vestal,* 278 N.C. 561, 588, 180 S.E. 2d 755, 773 (1971). Similarly, we recognize the possibility of falsity but find a reasonable probability of truthfulness of statements made by a victim/declarant to a law enforcement officer shortly before the victim's death which described ill will between the defendant and the victim and the victim's fear of the defendant. For the foregoing reasons, we have determined that the testimony of Sheriff Dement was within a recognized exception to the hearsay rule.

Having determined that the testimony of Sheriff Dement was not excluded by the hearsay rule, we must turn our attention to the question of whether this testimony was otherwise inadmissible. Evidence which does not violate the hearsay rule will nevertheless be excluded unless it is shown that it is relevant to an issue arising in the case in question. Some courts have indicated that all expressions of fear of the defendant by murder victims are relevant and admissible against the defendant when in human experience they are sufficiently reliable. *State v. Gause,* 107 Ariz. 491, 489 P. 2d 830 (1971), *vacated on other grounds,* 409 U.S. 815, 34 L.Ed. 2d 71, 93 S.Ct. 192 (1972). Other courts allow the admission of such evidence only if a limiting instruction is given and

only after a careful weighing of the probative value and the preju- dicial effect of the statements of the victim. *United States v. Brown*, 490 F. 2d 758 (D.C. Cir., 1973) (statements improperly ad- mitted). Evidence of a victim's fear of the defendant is subject to misuse. Therefore, the naked assertion by a victim prior to his death that he fears the defendant should not be admitted into evidence absent some evidence tending to show a factual basis for such alleged fear. While the use of statements of the victim tend- ing to show ill will between the defendant and the victim or fear of the defendant by the victim must be carefully scrutinized before being admitted into evidence, this Court has long allowed evidence of ill will between the defendant and the victim as tend- ing to show premeditation and deliberation, motive and intent. *State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10, *cert. denied*, 429 U.S. 932, 50 L.Ed. 2d 301, 97 S.Ct. 339 (1976); *State v. Fountain*, 282 N.C. 58, 191 S.E. 2d 674 (1972); *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969); *State v. Creech*, 229 N.C. 662, 51 S.E. 2d 348 (1949); *State v. Artis*, 227 N.C. 371, 42 S.E. 2d 409 (1947). Further, when the details of a prior dispute tend to demonstrate the ill will between the defendant and the victim, the details and the ap- parent reason for such ill will may be shown. 1 WHARTON'S CRIMINAL EVIDENCE, § 177 (13th ed. 1972). Additionally, evidence of motive for the commission of a crime may be admitted even though motive is not an element of the crime. *State v. Ruof*, 296 N.C. 623, 252 S.E. 2d 720 (1979). The mere fact that such evidence shows that the defendant committed another crime will not be grounds for its exclusion. See *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied*, 446 U.S. 941, 64 L.Ed. 2d 796, 100 S.Ct. 2165 (1980).

In the present case, Sheriff Dement's testimony concerning the victim's statement shortly prior to his death tended to show ill will between the defendant and the victim and was admissible. Even if Foster was not telling the truth about the facts surround- ing the argument he stated he had had with the defendant, the fact that he reported to the sheriff that the defendant was selling drugs on his property might well be viewed as tending to show ill will between Foster and the defendant. The sheriff's testimony was hearsay but within the well-founded exception to the hearsay rule permitting the admission of hearsay when the factors of necessity and reasonable probability of truthfulness are present.

The testimony was relevant to show ill will between the victim and the defendant and as tending to show a resulting intent, malice, premeditation and deliberation on the part of the defendant. The trial court carefully weighed the probative value of the testimony against its prejudicial effect and made detailed findings and conclusions in this regard. The trial court then admitted the sheriff's testimony with regard to the statement by the victim/declarant, but only after giving a proper limiting instruction to the jury. The trial court correctly instructed the jury that the jury was to consider the sheriff's testimony concerning the statement of the victim/declarant only to the extent the jury might find that it indicated motive, intent or ill will on the part of the defendant. This limiting instruction was essential, as the use of hearsay testimony concerning a statement by a victim prior to his murder is not unlimited. It should be admitted only to show the ill will between the defendant and the victim and the inferences which properly may be drawn therefrom. The trial court properly instructed the jury in this regard in the present case, and we find no error in the admission of the sheriff's testimony concerning the prior statement of the victim.

The defendant's next assignment of error concerns the use by the State in rebuttal of statements made by the defendant. The defendant claims that it was error to admit these statements into evidence. We find no error.

Prior to trial, the defendant made a discovery motion which resulted in a court order pursuant to G.S. 15A-903(a)(1) and (2) requiring the State to permit the defendant to inspect and copy any relevant written or recorded statements made by the defendant which the State intended to offer into evidence at the trial. During the rebuttal testimony of North Carolina State Bureau of Investigation Agent J. F. Walker, the State attempted to introduce into evidence the written notes made by Agent Walker of a statement that the defendant made to the agent on 27 February 1981. The defendant objected to the introduction of this evidence and the court held a *voir dire* to determine admissibility. Following direct and cross examination of Agent Walker on *voir dire*, the court heard arguments on the admissibility of the statement. The defendant based his objection on the grounds that the statement was incomplete because Agent Walker did not report everything the defendant said, that the defendant was not asked to verify

the accuracy of the statement at the time Agent Walker made his notes, that the defendant did not sign the statement and that the statement only corroborated and was not inconsistent with the defendant's testimony at trial. The State pointed out that the statement was not made during a custodial interrogation and contended the statement was inconsistent with the defendant's testimony. Specifically, the defendant told Agent Walker that he was at his grandfather's home on the night of 9 February 1981, rather than at his uncle's house, and that the defendant returned to his own home at 8:30 p.m. rather than around 9:00 p.m. as he had testified during trial. Upon the completion of the *voir dire* testimony and arguments, the trial court made findings and conclusions and admitted testimony concerning the defendant's statement into evidence over the defendant's objection.

[2]   On appeal, the defendant claims that the State failed to produce this statement as required by the pretrial order. The defendant contends that the State's failure to comply with the court order entered pursuant to G.S. 15A-903(a)(2) required the trial court to exclude the evidence. G.S. 15A-910 provides that upon failure of a party to comply with an order pursuant to Article 48 (Pretrial Procedure), the court *may*:

(1) Order the party to permit the discovery or inspection, or

(2) Grant a continuance or recess, or

(3) Prohibit the party from introducing evidence not disclosed, or

(4) Enter other appropriate orders.

It is important to note that while the statute sets out possible curative actions, it does not require the court to impose any sanction. Which sanction, if any, is the appropriate response to a party's failure to comply with a discovery order is entirely within the sound discretion of the trial court. The decision of the trial court will not be reversed absent a showing of abuse of that discretion. *State v. Stevens*, 295 N.C. 21, 37, 243 S.E. 2d 771, 781 (1978).

[3]   In the case *sub judice*, the record is devoid of any indication that the court abused its discretion. The defendant objected to the admission of the evidence and the court properly held a *voir*

*dire*. At no time during the *voir dire* examination or argument did the defendant request the imposition of a sanction under G.S. 15A-910. In fact, at no time did the defendant inform the court of the alleged failure of the State to comply with the discovery order. The purpose of the discovery procedures, authorized by N.C. General Statutes 15A, Article 48 (1975) is to protect the defendant from unfair surprise. *State v. Stevens*, 295 N.C. 21, 37, 243 S.E. 2d 771, 781 (1978). When the court is not informed of any potential unfair surprise, the defendant cannot properly contend that the trial court's failure to impose a sanction is an abuse of discretion. See *State v. Jones*, 295 N.C. 345, 245 S.E. 2d 711 (1978); *State v. Hill*, 294 N.C. 320, 240 S.E. 2d 794 (1978).

[4] The defendant's third assignment of error relates to the trial court's jury instructions. The defendant contends that the court impermissibly expressed an opinion that two of the witnesses for the State gave testimony at trial that was consistent with earlier statements. Specifically, the portion of the instructions in question is as follows:

Evidence has been received as corroboration tending to show that at an earlier time the witness, Florence Wright Hicks, made a statement to J. F. Walker consistent with her testimony at this trial;

That the witness, Florence Wright Hicks, made a statement to Deputy Sheriff Wesley Denton consistent with her testimony at this trial; and

That the witness, Harry Pearce made a statement to J. F. Walker consistent with his testimony at this trial.

You must not consider such earlier statements as evidence of the truth of what was said at the earlier time because it or they were not made under oath at this trial.

If you believe that such earlier statements were made and that they are consistent with the testimony of the witness at this trial, then you may consider this together with all other facts and circumstances bearing upon the witness's truthfulness in deciding whether you will believe or disbelieve his, her or their testimony at this trial.

The defendant's contention that this instruction was improper is without merit.

The instruction given by the court is identical to the North Carolina Pattern Jury Instructions on corroborative evidence. N.C.P.I.—CRIM. § 105.05 (June, 1970). This exact instruction was approved by the Court of Appeals in *State v. McNeil,* 46 N.C. App. 533, 536-37, 265 S.E. 2d 416, 419, *cert. denied,* 300 N.C. 560, 270 S.E. 2d 114 (1980), and similar instructions were approved by this Court in *State v. Detter,* 298 N.C. 604, 630-31, 260 S.E. 2d 567, 586 (1979). The instruction specifically states that the jury should consider the evidence "[i]f you believe such earlier statements were made and that they are consistent with the testimony of the witness at this trial." Therefore, the instruction correctly placed the onus on the jury to determine whether such statements were consistent with prior testimony of the witnesses. In fact, an instruction on corroboration omitting the cautionary language "if you find that this statement does corroborate his/her testimony" has been held to be sufficient. *State v. Detter,* 298 N.C. 604, 630, 260 S.E. 2d 567, 585 (1979); *State v. Case,* 253 N.C. 130, 136, 116 S.E. 2d 429, 433 (1960), *cert. denied,* 365 U.S. 830, 5 L.Ed. 2d 707, 81 S.Ct. 717 (1961). We find no prejudicial error in this instruction.

[5]  The defendant's fourth assignment of error involves the trial court's instructions concerning corroboration given immediately before and after the various witnesses' testimony. The defendant does not object to the admission of the testimony, but argues that the limiting instructions were unclear as they allowed the jury to use the evidence to corroborate any previous witness, rather than the witness who had made the statement. There were three instances in which the trial court instructed the jury on corroboration. The first occurred during the redirect examination of Agent Walker. Prior to the corroborative testimony, the judge instructed the jury as follows:

At this time, ladies and gentlemen of the jury, the objection is overruled. The evidence which you are about to hear is being admitted for the limited purpose of corroboration. That is to the extent that you find that it corroborates the previous testimony of the witness made under oath at this trial, you will consider it for that purpose and that purpose alone.

Prior to the corroborative testimony of Deputy Sheriff Denton, the court instructed the jury:

> Ladies and gentlemen of the jury, the following is being admitted for the limited purpose of corroboration. I have previously instructed you with the use with regard to the word, corroboration. You will at this time recall that instruction.

Immediately following the corroborative testimony of Deputy Sheriff Denton, the court stated, "This ends the point at which the evidence is admitted for the limited purpose of corroboration." During the State's rebuttal evidence, Agent Walker again testified and after the defendant's objection the court instructed the jury:

> Ladies and gentlemen of the jury—objection over-ruled—now, the following evidence is being admitted for the limited purpose of corroboration. That is to the extent that you find that the testimony of this witness corroborates the testimony of a previous witness given under oath at this trial, you will consider it for that purpose and that purpose alone.

Finally, following the end of Agent Walker's corroborative testimony, the court instructed the jury, "Now, ladies and gentlemen of the jury, this ends the point at which the evidence was admitted for the limited purpose of corroboration with respect to the witness, Harry Pearce."

The defendant bases his assignment of error on *State v. McMillan*, 55 N.C. App. 25, 284 S.E. 2d 526 (1981). In that case, the trial court instructed that the testimony should be considered if it corroborates the testimony of "a witness" or "a previous witness." The trial court in *McMillan* never specified which witness the testimony could corroborate. The Court of Appeals held that these instructions were erroneous, albeit harmless error, because the limiting instruction given did not clearly charge the jury that it was to consider the witness's statement only as corroboration of her earlier testimony. *Id.* at 30, 284 S.E. 2d at 530.

A prior consistent statement by a witness is admissible only to corroborate the trial testimony of the witness who made the

statement. *State v. Miller*, 288 N.C. 582, 596, 220 S.E. 2d 326, 336 (1975). While the instructions in the present case were not perfect, they were sufficient to indicate to the jury the witness to whom the corroborative testimony was to relate. The instruction prior to Agent Walker's testimony stated that the testimony should be considered only if the jury found that "it corroborates *the* previous testimony of *the* witness." (Emphasis added.) Additionally, the court informed the jury that "at a later time during my instructions to you, I will give you more detailed instructions with regard to the word, corroboration, and at that time you will recall the testimony which you are about to hear." The instructions as to Deputy Sheriff Denton's testimony asked the jury to recall the previous corroborative instruction. The instruction as to Agent Walker's rebuttal testimony concerning a prior statement by witness Harry Pearce consistent with Pearce's testimony at trial is the most troublesome. The court stated that the testimony should be considered as corroborative if the jury found that "the testimony of *this* witness corroborates the testimony of *a* previous witness . . . ." (Emphasis added.) While this form of the instruction may be ambiguous, the court later clarified its meaning. In its instruction before the testimony, the court stated again that a more detailed instruction and definition of corroboration would be given later. Following the testimony, the court removed all ambiguities as to the purpose for which the evidence was admitted. The court stated that "the evidence was admitted for the limited purpose of corroboration with respect to the witness, *Harry Pearce*." (Emphasis added.) The court could not have been more specific as to which prior witness's testimony this evidence could be considered corroborative.

Further, the trial court in its instructions, specifically discussed in detail the corroborative evidence admitted. The corroborative testimony of each of the witnesses was referred to by both the name of the corroborative witness and the name of the witness who made the prior statement to be corroborated. Viewing the instructions in their entirety, we find no error in the instructions on corroborative evidence.

By his fifth assignment of error, the defendant contends that he is entitled to a new trial based on the court's error in denying a portion of his pretrial discovery motion and the State's failure to provide certain requested information. The defendant's brief on

this assignment, when compared to the record, is convoluted at best. The court denied the defendant's request for several items. The specific items and the court's denial of them were not referred to or included in the defendant's assignments of error and therefore any grounds for appeal as to these items are deemed abandoned. Rule 28(a), N.C. Rules of App. Pro.; *State v. Fowler,* 285 N.C. 90, 203 S.E. 2d 803 (1974), *death sentence vacated,* 428 U.S. 904, 49 L.Ed. 2d 1212, 96 S.Ct. 3212 (1976). From the assignments and exceptions as gleaned from the record, we find no error.

[6] The defendant's pretrial discovery motion requested the court to order the State to make available certain evidence and information. Some of these requests were granted. Several of the paragraphs in the discovery motion and in the assignment of error referred to the identity of the State's prospective witnesses. Specifically, in his pretrial motion the defendant requested a list of all of the State's witnesses, the names of all persons with some knowledge of facts of the case against the defendant and all the statements of all persons interrogated or interviewed during the investigation. There is no common law right to discovery in criminal cases. *State v. Tatum,* 291 N.C. 73, 229 S.E. 2d 562 (1976); *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334, *cert. denied,* 377 U.S. 978, 12 L.Ed. 2d 747, 84 S.Ct. 1884 (1964). The categories of information discoverable from the State are contained in G.S. 15A-903. While the defendant couched his request in varying forms, the defendant in these several requests was attempting to obtain a list of the State's witnesses and their statements. A defendant is not entitled to a list of the State's witnesses. *State v. Moore,* 301 N.C. 262, 271 S.E. 2d 242 (1980); *State v. Sledge,* 297 N.C. 227, 254 S.E. 2d 579 (1979); *State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977); *State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1977); *State v. Tatum,* 291 N.C. 73, 229 S.E. 2d 562 (1976).

Additionally, there is no statutory right to statements of the State's witnesses. G.S. 15A-903(d) provides:

Documents and Tangible Objects.—Upon motion of the defendant, the court must order the solicitor to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, motion pictures, mechanical or electronic recordings, tangible objects, or copies or portions

thereof which are within the possession, custody, or control of the State and which are material to the preparation of his defense, are intended for use by the State as evidence at the trial, or were obtained from or belonged to the defendant.

Standing alone, this provision would appear to require the State to disclose at least any written statements. This section is, however, restricted by G.S. 15A-904(a), which states: "Except as provided in G.S. 15A-903(a), (b), (c) and (e), this Article does not require the production of . . . statements made by witnesses or prospective witnesses of the State to anyone acting on behalf of the State." Therefore, any statements made to law-enforcement officers are expressly excluded from the discoverable evidence. The trial court did not have authority to order the State to disclose either the names of the State's witnesses or their statements.

[7] The defendant in his brief assigned as error the failure of the trial court to grant his discovery motion with regard to the total and complete investigative files of all law-enforcement agencies which took part in the investigation and the names and addresses of all agents of the State involved in the investigation. As to the names of the agents who participated in the investigation, as with the names of the witnesses, there is no statutory authority for the granting of this motion. In regard to the request for the total and complete investigative files, it should be noted that no one paragraph of the Motion for Discovery includes such a request; therefore it would seem that the defendant is admitting that the disclosure of the entire investigative file was the true objective of his discovery motion. Due process does not require the State to make a complete disclosure to the defendant of all of the investigative work on a case. *Moore v. Illinois*, 408 U.S. 786, 33 L.Ed. 2d 706, 92 S.Ct. 2562 (1972). G.S. 15A-903(d) requires the disclosure to the defendant of all documents and tangible objects "which are material to the preparation of his defense, are intended for use by the State as evidence at the trial, or were obtained from or belonged to the defendant." This section does not alter the general rule that the work product or investigative files of the District Attorney, law-enforcement agencies, and others helping to prepare the case are not open to discovery. See the Official Commentary following G.S. 15A-904.

The defendant claims that the information sought was discoverable under *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d

215, 83 S.Ct. 1194 (1963), and that the failure of the State to disclose the information sought violated the defendant's right to due process by hindering his preparation of a defense. It should first be noted that *Brady* only requires the disclosure, upon request, of evidence *favorable* to the accused and not a disclosure of all evidence. Moreover, in *United States v. Agurs*, 427 U.S. 97, 49 L.Ed. 2d 342, 96 S.Ct. 2392 (1976), the Supreme Court clarified *Brady*. The Court held that a general request for all *Brady* information or all exculpatory information does not create a prosecutorial duty to respond with the production of all information. *Id.* at 107, 49 L.Ed. 2d at 351-52, 96 S.Ct. at 2399. More significantly, the Court held that the Constitution does not require that the defendant be allowed a broad discovery of all of the prosecution's files. *Id.* at 109, 49 L.Ed. 2d at 353, 96 S.Ct. at 2400. In determining whether the suppression of certain information was violative of the defendant's right to due process, the focus should not be on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, but rather should be on the effect of the nondisclosure on the outcome of the trial. *Id.* at 112, 49 L.Ed. 2d at 354-55, 96 S.Ct. 2401, n. 20; *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977). The evidence withheld must also be material. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110, 49 L.Ed. 2d 342, 353, 96 S.Ct. 2392, 2400. The defendant has not shown that any evidence not disclosed was "material" and what effect, if any, the nondisclosure would have had on the outcome at trial. *Id.* at 104, 49 L.Ed. 2d at 350, 96 S.Ct. at 2398.

The defendant's requests were clearly part of a fishing expedition intended to allow the defendant to search through the State's files and evidence in the hope of discovering any information that might aid in the preparation of a defense. We find no statutory provision or constitutional principle that would require the trial court to order the State to make available to the defendant all of the material that it had gathered in preparation for trial. *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664 (1972); *State v. McDougald*, 38 N.C. App. 244, 248 S.E. 2d 72 (1978).

[8] The defendant also requested the complete criminal records of all of the State's witnesses. The defendant claims that the

State's key witness, Florence Hicks, had been convicted of driving under the influence and that this information had not been revealed to the defendant. The trial court is without authority to grant such a request and the failure of the court to order the disclosure of the State's witnesses' criminal records is not violative of due process. *State v. Ford,* 297 N.C. 144, 254 S.E. 2d 14 (1979). In fact the original draft of G.S. 15A-903 included a provision to require the State to disclose the criminal records of its witnesses, but this language was removed prior to the statute's enactment. See Official Commentary following G.S. 15A-903; *State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569 (1982). It should also be pointed out that the fact that Mrs. Hicks had been convicted of driving under the influence was brought out by the defendant on cross-examination, and the failure of the State to disclose this conviction could not have harmed the defendant.

[9] Additionally, the defendant contends that his pretrial motion for disclosure of all agreements, rewards or benefits promised to any witness for his or her testimony was not complied with by the State. The defendant's claim is based on the testimony elicited from Mrs. Hicks during trial. Mrs. Hicks testified that she worked for the son of one of the victims and that she usually earned $3.50 an hour. She also stated that her last pay check was in the amount of $182.82 for less than one week's work. Although the defendant asked Mrs. Hicks if she worked less than 40 hours, the amount of time that she worked was never established, beyond the fact that she worked less than the full week. It is anything but clear from this evidence that Mrs. Hicks was being rewarded or compensated in any way for her testimony. Beyond this, there is no indication, other than the defendant's assertion on appeal, that the State was in any way involved with or even aware of any variance in Mrs. Hicks' pay for the period in question. Furthermore, this information was elicited on cross-examination and therefore the evidence was before the jury. The defendant's assignment of error is overruled.

[10] The defendant next assigns as error the admission into evidence of a receipt issued by the clerk of court's office indicating a payment of $205.00 towards the cost and/or fine imposed against the defendant in another criminal case. The defendant contends that the State's exhibit was inadmissible and

irrelevant and was introduced solely for the purpose of exciting prejudice against the defendant and confusing the jury.

The defendant testified that he was unemployed on the date of the murder, 9 February 1981, and that the only money that he had was the ten dollars a week that his mother gave him. He also testified that the $205.00 payment was made on 12 February 1981 to the clerk's office by his mother on his behalf. The State contends that the testimony of the deputy clerk of court and the receipt that she gave in the amount of $205.00 were properly admissible to impeach the defendant. The problem with the State's argument is that the exhibit and the testimony of the witness do not tend to impeach the defendant. The receipt indicated that it was a receipt *of* Howard Alston, but does not indicate that Howard Alston actually paid the money. The deputy clerk of court testified that, unless requested to do otherwise, she only writes on the receipt the name of the person for whom the payment is made and that people will often make payments for someone else. She further testified that she did not remember who made the payment for Howard Alston on 12 February 1981. Therefore, the receipt had little probative value and should not have been admitted.

Evidence without any tendency to prove a fact in issue is inadmissible, although the admission of such evidence is not reversible error unless it is of such a nature as to mislead the jury. *Brandis on North Carolina Evidence*, § 77 (2d ed. 1982). The defendant is not entitled to a new trial based on trial errors unless such errors were material and prejudicial. *State v. Billups*, 301 N.C. 607, 272 S.E. 2d 842 (1981). The admission of irrelevant evidence is generally considered harmless error. The defendant has the burden of showing that he was prejudiced by the admission of the evidence. *State v. Atkinson*, 298 N.C. 673, 259 S.E. 2d 858 (1979). In order to show prejudice, the defendant must meet the statutory requirements of G.S. 15A-1443(a) which are as follows:

A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.

The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

*Cf. Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963).

In the present case, the defendant failed to carry his burden of showing any prejudice by the admission of the receipt. The fact of the criminal conviction had already been properly disclosed to the jury. The State's witnesses had testified that no money was taken from the grocery store in which the murders took place and Mrs. Hicks testified that when she saw the defendant he said that, although he killed the victims, he did not take anything because he was not interested in money. At most, the evidence was irrelevant but not prejudicial to the defendant.

[11] The defendant's next assignment of error concerns the trial court's denial of his motion for a bill of particulars. The defendant made two motions. The first motion was included in the record on appeal and was made on 1 June 1981 and was properly denied in the court's pretrial order of 3 July 1981. The first motion requested "all events and circumstances surrounding the alleged homicide of ROBERT W. FOSTER and JACK STAINBACK, JR. and the defendant's alleged participation therein." G.S. 15A-925(b) requires that a motion for a bill of particulars "request and specify items of factual information desired" and G.S. 15A-925(c) specifies that "[n]othing contained in this section authorizes an order for a bill of particulars which requires the State to recite matters of evidence." The defendant's request is quite general and the granting of it would require the State to recite matters of evidence. The granting of a motion for a bill of particulars is within the discretion of the trial court and is not subject to review except for palpable and gross abuse of the court's discretion. *State v. Detter,* 298 N.C. 604, 260 S.E. 2d 567 (1979). We find that the court did not abuse its discretion.

Following the court's denial of his first motion, the defendant filed another motion for a bill of particulars. The trial transcript includes the arguments of counsel on this motion and the court's order denying specific paragraphs of the motion. However, the

defendant's actual motion was not included in the record on appeal.

It is the appellant's duty and responsibility to see that the record is in proper form and complete. Rule 9(b)(3)(v) and (vii), N.C. Rules of App. Pro.; *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969), *death sentence vacated*, 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2283 (1971). From the record before us, we cannot, without engaging in speculation, determine the substance of the specific paragraphs of the motion that were denied by the trial court. The trial court only referred to the motion by the labeled paragraphs and denied each on various legal theories. "An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court." *State v. Williams*, 274 N.C. 328, 333, 163 S.E. 2d 353, 357 (1968).

Since the motion is not before this Court, the defendant's assignment of error amounts to a request that this Court assume or speculate that the trial judge committed prejudicial error in his ruling. See *State v. Cockrell*, 230 N.C. 110, 52 S.E. 2d 7 (1949). While we are not compelled to do so, due to the nature of this case we have reviewed the record with regard to this assignment of error. To the extent that the court's ruling can be gleaned from the arguments of counsel and the court's order, we find no error in the denial of the defendant's second motion for a bill of particulars.

[12] Finally, the defendant assigns as error the trial court's denial of his motion for nonsuit. The test applied in a criminal action to determine the sufficiency of the evidence is the same for a motion for nonsuit, dismissal or directed verdict. *State v. Locklear*, 304 N.C. 534, 284 S.E. 2d 500 (1981). The test is whether substantial evidence of all material elements of the offense charged was presented. In applying this standard, all of the evidence is to be considered in the light most favorable to the State and the State is afforded every reasonable intendment and inference drawn from the evidence. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980).

The State presented evidence of statements made by the defendant admitting that he killed both victims. According to the State's evidence the defendant killed Foster and then killed Stain-

back to prevent him from reporting the first killing. This evidence was presented through the State's witness, Florence Hicks. The credibility of the witness and the weight to be given to her testimony are questions for the jury to resolve. *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980). The evidence presented, taken in the light most favorable to the State, is sufficient to withstand the defendant's motion for nonsuit. The motion was properly denied.

We hold that the defendant received a fair trial, free from prejudicial error.

No error.