NO. COA14-204

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

STATE OF NORTH CAROLINA

    v.

REGINA ANN HAWK,
    Defendant.

Montgomery County
No. 11CRS051364

Appeal by defendant from Judgment entered on or about 11 July 2013 by Judge Michael E. Beale in Superior Court, Montgomery County. Heard in the Court of Appeals 12 August 2014.

> *Attorney General Roy A. Cooper, III, by Assistant Attorney General Carrie D. Randa, for the State.*

> *Cheshire Parker Schneider & Bryan, PLLC, by John Keating Wiles, for defendant-appellant.*

STROUD, Judge.

Regina Hawk ("defendant") appeals from the judgment entered after a Montgomery County jury found her guilty of felony death by motor vehicle and reckless driving. We find no prejudicial error at defendant's trial.

## I. Background

Defendant was indicted for felony death by motor vehicle under N.C. Gen. Stat. § 20-141.4(a1) (2011) and reckless driving

under N.C. Gen. Stat. § 20-140(a) (2011). Defendant pled not guilty and proceeded to jury trial. At trial, the State's evidence tended to show that on the evening of 3 September 2011, defendant was hanging out with friends and drinking beer. After picking up her friend Derisa Comer, defendant drove her SUV to another friend's house to cook out and drink beer. When she arrived around 10 p.m., she told Randy East that she had consumed about three beers.

Defendant drove Mr. East, Cody Bailey, Pam Singleton, and Ms. Comer to the store to pick up more beer. Around 1:40 a.m. on 4 September, as they were driving along the rural Aunt Queen Rd., defendant veered off to the side of the road, over-corrected back to the other side, and then pulled back to the right side. When she pulled back to the right side, her vehicle flipped over. Ms. Singleton was sitting in the back seat, but was not wearing her seatbelt. She was leaning forward to change the radio when the vehicle flipped. When it flipped, Ms. Singleton was partially ejected through the passenger side window. Defendant was stuck in the driver's seat, but the two men were unhurt and were able to get out. They left to get help.

Captain Stephen Hurley, with Montgomery County Rescue, was one of the first to respond to the scene. He checked Ms.

Singleton for a pulse, but found none. The medical examiner later concluded that Ms. Singleton died from traumatic brain injury. Capt. Hurley noticed a strong odor of alcohol coming from the car and saw some beer cans and a bottle of tequila in the vicinity. Defendant had suffered massive trauma to her scalp, so he pulled her out of the vehicle. Once out of the vehicle, defendant just kept asking for a cigarette. Capt. Hurley noticed that she was slurring her words and thought that she seemed intoxicated.

Defendant was transported to Wake Forest Baptist Hospital for treatment. Dr. Chadwick Miller treated her when she arrived. He ordered the typical battery of tests for trauma victims, including a blood ethanol test to check for the presence of alcohol. He could not say who actually drew the blood for the test, nor what specifically happened to it on that night, though he did explain their normal procedure for drawing blood and sending it to the hospital's laboratory for testing. The laboratory used a Beckman Coutler DXC analyzer to test the blood. Dale Dennard, the Director of Pathology and Clinical Labs testified to the normal testing procedure employed at the hospital. But he did not know which of their analysts actually tested defendant's blood sample.

The hospital records introduced at trial reflected that Dr. Miller had ordered a blood alcohol test as part of a standard battery of blood tests at 3:22 a.m. The tests returned a result of 212 milligrams of alcohol per deciliter of blood plasma. Based in part on this test, and defendant's behavior at the hospital, Dr. Miller diagnosed her with alcohol intoxication. Dr. Miller was "concerned that the patient was exhibiting behavior consistent with someone who may have a difficult time making decisions for themselves[.]"

Later on the morning of 4 September, Trooper Jeremy Anderson interviewed defendant in the hospital. Trooper Anderson testified that defendant was slow to respond to his questions and that her speech was slurred. When he asked defendant how much she had to drink, she responded, "at least a 12-pack." He opined that she was intoxicated, though he admitted that he did not know what medications she had been administered at that point.

Because the hospital blood test results were from a plasma sample and given in milligrams per deciliter, the State called Paul Glover to translate the blood plasma results to a whole blood alcohol concentration in grams per milliliter. Defendant objected to Mr. Glover's testimony because the State had only

notified him of their intent to call Mr. Glover as an expert two days before trial. The prosecutor explained that the State did not know they would have to call Mr. Glover to testify about the conversion formula until the week prior to trial. Defendant did not move for a continuance. The trial court denied defendant's motion to exclude Mr. Glover's testimony, though it did delay his testimony until the following morning to allow defense counsel time to prepare. Mr. Glover explained how he converted the test results from the hospital's blood test to the accepted legal measure for blood alcohol concentration. He testified that using the accepted conversion formula results in a blood alcohol concentration of .17 g per 100 mL of whole blood.

After the close of the State's evidence, defendant elected to present evidence and testify on her own behalf.

## II. Blood Test

Defendant argues on appeal that the trial court erred in admitting evidence of the blood alcohol test performed by the hospital as part of its treatment of defendant's injuries. She contends that because the State failed to show who actually drew the blood and who actually performed the test, it cannot be admissible. Even assuming defendant were correct, we hold that given the overwhelming evidence that defendant had consumed a

substantial amount of alcohol so as to impair her ability to drive, any error in admitting the blood test was not prejudicial.

We review a trial court's decision to admit evidence over an objection concerning the chain of custody for an abuse of discretion. *State v. Campbell*, 311 N.C. 386, 388-89, 317 S.E.2d 391, 392 (1984). Erroneous admission of evidence only entitles the defendant to a new trial if she can show that the error was prejudicial. *State v. Alston*, 307 N.C. 321, 339, 298 S.E.2d 631, 644 (1983); N.C. Gen. Stat. § 15A-1443(a) (2013). Such an error is prejudicial "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *Alston*, 307 N.C. at 339, 298 S.E.2d at 644 (quoting N.C. Gen. Stat. § 15A-1443(a)).

There are two accepted methods of proving impaired driving: proof of blood alcohol concentration (BAC) greater than .08 g per 100 mL of blood (or 210 liters of breath) or evidence that the defendant had consumed alcohol along with evidence of impairment. *State v. Oliver*, 343 N.C. 202, 215, 470 S.E.2d 16, 24 (1996) (holding that DWI is a single offense "which may be proven in . . . two ways"); *State v. Roach*, 145 N.C. App. 159,

163, 548 S.E.2d 841, 844 (2001) (discussing the two methods of proving impaired driving). So, the State can prove driving while impaired even absent evidence of defendant's BAC. *State v. Harrington*, 78 N.C. App. 39, 46, 336 S.E.2d 852, 856 (1985) (observing that "the State may prove DWI where the BAC is entirely unknown").

Here, the evidence, even excluding the blood test, showed that defendant lost control of her vehicle on a country road after consuming a substantial amount of alcohol and that she was appreciably impaired. When Trooper Jeremy Anderson interviewed defendant slightly before 4 a.m., she admitted drinking "at least a 12-pack." Testifying on her own behalf, defendant admitted drinking at least seven or eight beers before 10 p.m. that evening, though she denied being impaired. Captain Stephen Hurley, with Montgomery County Rescue, testified that when he arrived on the scene, he noticed the strong odor of alcohol. When he spoke with defendant, she just kept asking for a cigarette, slurring her words. He opined that she seemed intoxicated. Finally, Dr. Chadwick Miller treated defendant when she arrived at Wake Forest Baptist Hospital. Largely based on her behavior at the hospital, Dr. Miller diagnosed defendant with alcohol intoxication.

Thus, it is undisputed that defendant drank a large quantity of beer on the night in question before getting behind the wheel of her car. One law enforcement and two medical witnesses opined that she appeared intoxicated after the collision. *Cf. State v. Brown*, 87 N.C. App. 13, 20-21, 359 S.E.2d 265, 269 (1987) (holding that "the defendant's admission of being 'intoxicated' or having 'consumed too much beer' at 2:30 a.m.–3:00 a.m. is sufficient evidence from which the jury could infer that the defendant was impaired between 1:05 a.m. and 1:52 a.m."); *State v. Vassey*, 154 N.C. App. 384, 390, 572 S.E.2d 248, 252 (2002) (noting that the State need only prove appreciable impairment to sustain an impaired driving conviction), *disc. rev. denied*, 356 N.C. 692, 579 S.E.2d 96 (2003).

The only issue raised by defendant in her defense was the conduct of the other passengers. She and Ms. Comer claimed that the two men in the car were "picking at" Ms. Singleton, trying to bite her. They both testified that Ms. Singleton had climbed into Ms. Comer's lap in the front passenger seat. Both male passengers denied that they had been horsing around with Ms. Singleton or that she climbed into the front seat before the crash. Defendant claimed that Ms. Singleton's foot was on the

steering wheel, so when she tried to turn the wheel it would not budge. According to defendant, when Ms. Singleton's foot came off the wheel, she lost control of the vehicle and went off the road. It is clear from the jury's verdict that they did not believe defendant's evidence.

The question for us is not whether the blood test evidence might have influenced the jury, but whether there is a reasonable possibility that, absent such evidence, the jury would have reached a different verdict. *See Alston*, 307 N.C. at 339, 298 S.E.2d at 644. Given the evidence here, we conclude that there is no reasonable possibility that the jury would have reached a different result had the blood test results been excluded. Therefore, we hold that defendant has failed to show that she was prejudiced by the admission of that evidence. *See id.*

### III. Expert Testimony

Defendant next argues that the trial court erred in allowing Paul Glover to testify for the State regarding the conversion of the blood plasma test results used by the hospital to the legal standard for blood alcohol concentration. The challenged testimony only related to the blood test evidence. For the same reasons that admission of the blood test was not

prejudicial, admission of Mr. Glover's testimony was not prejudicial. Therefore, even assuming this testimony was admitted in error, defendant is not entitled to a new trial. *See id.*

IV.  Conclusion

For the foregoing reasons, we conclude that defendant has failed to show that her trial was affected by prejudicial error.

NO PREJUDICIAL ERROR.

Chief Judge MCGEE and Judge BRYANT concur.