STATE OF NORTH CAROLINA v. DAVID McGILL, JR.

No. COA99-1454

(Filed 19 December 2000)

### Discovery— child abuse—social services records

There was prejudicial error in a prosecution for first-degree sexual offense and indecent liberties where defendant was denied access to social services records concerning prior allegations of abuse. Upon review of the sealed records, the Court of Appeals determined that defendant was denied evidence favorable to him which could have been used to impeach the credibility of key witnesses for the State; that the evidence was material because there is a reasonable probability that the result would have been different had the records been disclosed; and that there was prejudice because a defendant charged with sexual abuse of a minor has a constitutional right to have the records of the child abuse agency pertaining to the prosecuting witness reviewed, with disclosure of favorable and material evidence, and the State here did not argue that the error was harmless and thus failed to meet its burden of showing that the constitutional error was harmless beyond a reasonable doubt.

Appeal by defendant from judgments dated 23 October 1998 by Judge Forrest A. Ferrell in Cherokee County Superior Court. Heard in the Court of Appeals 17 October 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Teresa L. Harris, for the State.*

*McKinney & Tallant, P.A., by Zeyland G. McKinney, Jr., for defendant-appellant.*

GREENE, Judge.

David Eugene McGill, Jr. (Defendant) appeals from convictions of four counts of first-degree sexual offense upon a minor child (G.H.) and of two counts of indecent liberties with G.H.

### Pre-trial

On 18 May 1998, Defendant filed motions requesting the right to inspect records of G.H. from the Cherokee County (CCDSS) and Gaston County (GCDSS) Departments of Social Services for exculpa-

tory information. Defendant believed these records would "show that the State's [p]rosecuting [w]itness, [G.H.], filed formal complaints against . . . Defendant in said Count[ies], and Defendant believes such records will show exculpatory material contained therein." On 21 May 1998, the trial court, after conducting an *in camera* inspection of the file of CCDSS, identified four pages of materials from the file as "possibly exculpatory" and ordered them to be given to Defendant and ordered a copy of the entire file be sealed and deposited for further *in camera* review, should it be necessary. The four pages given to Defendant contained allegations of abuse and neglect made in December 1996 against Lynn Hampton (Hampton), G.H.'s mother, and Defendant, Hampton's boyfriend. At the time these allegations were made, Hampton stated G.H. "was bad to set fires." Also contained in the four pages given to Defendant was an interview with the elementary school principal of G.H. and his younger brother R.H., in which the principal stated "he feels like [G.H. and R.H.] are prone to exagerate [sic] and make things bigger than they are."

On 19 October 1998, prior to jury selection, the trial court stated it had reviewed the records of GCDSS and "found nothing exculpatory in them. It's all inculpatory." The trial court then sealed the records of GCDSS for further *in camera* inspection if necessary.

### State's evidence

G.H. testified that in 1997 and the early part of 1998, when he was nine years old, G.H., R.H., and Hampton lived with Defendant in Murphy, North Carolina. In November 1997, Defendant awakened G.H. at approximately 12:00 a.m. and made G.H. "come in the living room and sit on his lap." Defendant made G.H. sit there and watch a pornographic movie as he "touched [G.H.'s] privates . . . and made [G.H.] take [Defendant's] pants off." G.H. was in the living room with Defendant for approximately one hour.

In January 1998, Defendant awakened G.H. from his sleep at around 2:30 a.m. and made G.H. watch the same video he had seen in November. Shortly after the video ended, Defendant made G.H. take off Defendant's pants and then Defendant went into the bathroom. Defendant made G.H. enter Defendant's bedroom and Defendant removed G.H.'s clothes. G.H. testified Defendant made him "suck [Defendant's] peter" and made G.H. kiss him. G.H. stated "this whole thing" lasted "[a]bout five hours," while Defendant "stuck his tongue in[to G.H.'s] butt," bit G.H.'s penis, and put [Defendant's] penis into

G.H.'s "butt." On cross-examination, G.H. stated he wanted to live with his grandmother, even during the time period he was living with Defendant.

R.H. testified that in November 1997, G.H. was crying and G.H. told him Defendant made him watch a pornographic movie and made G.H. pull Defendant's pants off. R.H. recalled that during the "second time," which he believed occurred in November 1997, G.H. went into Defendant's bedroom and Defendant closed the door. The next morning, G.H. told R.H. Defendant "molested him in the behind." On cross-examination, R.H. testified he wanted to live with his grandmother because Defendant "would be mean to [him]" and Defendant would tell him to do his homework and chores. If R.H. or G.H. did not do their homework or chores, they "would get a whipping." R.H. denied ever watching pornographic videos at his grandmother's house.

Hampton testified that a week after the November 1997 incident, G.H. told her Defendant "got [G.H.] up in the middle of the night and had [G.H.] come and watch [television] with [Defendant] . . . and [Defendant] had [G.H.] take [Defendant's] pants off." G.H. told Hampton Defendant "pulled [G.H.] down toward[] [Defendant's] penis." In January 1998, when she arrived home from work during the early morning hours, Hampton found Defendant who was naked under the covers and G.H. in the bed together.

On cross-examination, Hampton testified when she and Defendant, along with R.H. and G.H., lived in Gastonia, before their move to Murphy in 1996, she and Defendant were investigated concerning allegations about sexual contact with G.H. and R.H. Hampton recalled making a statement about G.H. "watching dirty movies at [his grandmother's] house and looking through a peephole and watching" his uncle and another man engaging in sexual acts. After finding G.H. in the bed with Defendant in January 1998, Hampton never saw any "blood or feces" in G.H.'s underwear and did not inspect the sheets in Defendant's bedroom. In addition, Hampton did not notice any discomfort in G.H. subsequent to the incident in January of 1998.

Chanda Enand (Enand), a physician's assistant at Carolina Medical Center in Charlotte, North Carolina, examined G.H. on 30 April 1998 after the reported sexual abuse. Enand testified G.H.'s physical exam was "normal," however, the overall assessment, "including [an] interview and physical exam [was] consistent with probable sexual abuse." Enand revealed "[s]ixty or seventy percent of the children who are sexually abused" have normal exams.

## *Defendant's evidence*

Defendant testified he did not sexually assault G.H. nor did he make G.H. watch a pornographic video. In addition, Debra Sears (Sears), the Child Protective Services Supervisor for CCDSS, testified Hampton and Defendant had previously been investigated concerning allegations of sexual abuse and "nothing was found."

## *Closing arguments*

In closing arguments, Defendant argued testimony G.H. and R.H. watched pornographic videos and G.H. and R.H. saw their uncle and another man engaging in sexual acts provided "the source of the information where some child ten years old could get . . . these types of allegations." The State, however, argued G.H.'s exposure to pornography did not provide a basis for his allegations. The State contended "what happened to [G.H.] that night was . . . awful . . . . Do you think [G.H.] saw that on a pornographic video?"

---

The dispositive issue is whether the records from GCDSS concerning prior allegations of sexual abuse by G.H. contain information that is favorable to Defendant and material to his guilt or punishment.

Defendant argues the trial court erred in refusing to give him access to the records of GCDSS. He asks this Court to review the records to determine whether they contain any exculpatory information.

A defendant who is charged with sexual abuse of a minor has a constitutional right to have the records of the child abuse agency that is charged with investigating cases of suspected child abuse, as they pertain to the prosecuting witness, turned over to the trial court for an *in camera* review to determine whether the records contain information favorable to the accused and material to guilt or punishment. *Pennsylvania v. Ritchie*, 480 U.S. 39, 58, 94 L. Ed. 2d 40, 58 (1987). If the trial court conducts an *in camera* inspection but denies the defendant's request for the evidence, the evidence should be sealed and "placed in the record for appellate review." *State v. Hardy*, 293 N.C. 105, 128, 235 S.E.2d 828, 842 (1977). On appeal, this Court is required to examine the sealed records to determine if they contain information that is "both favorable to the accused and material to [either his] guilt or punishment." *Ritchie*, 480 U.S. at 57, 94 L. Ed. 2d at 57; *see also Hardy*, 293 N.C. at 127-28, 235 S.E.2d at 842; *State v.*

*Jarrett,* 137 N.C. App. 256, 267, 527 S.E.2d 693, 700, *disc. review denied,* 352 N.C. 152, —— S.E.2d —— (2000). If the sealed records contain evidence which is both "favorable" and "material," defendant is constitutionally entitled to disclosure of this evidence. *Id.* at 60, 97 L. Ed. 2d at 59.

### Evidence favorable to defendant

"Favorable" evidence includes evidence which tends to exculpate the accused, as well as "any evidence adversely affecting the credibility of the government's witnesses." *U.S. v. Trevino,* 89 F.3d 187, 189 (4th Cir. 1996); *see also Love v. Johnson,* 57 F.3d 1305, 1313 (4th Cir. 1995).

We have reviewed the records of GCDSS which were sealed by the trial court to determine if they contain information favorable to Defendant. Prior to the incidents in this case, there are two other allegations Defendant abused G.H. and R.H., neither of which were substantiated by GCDSS. The allegation made in 1996 is revealed in the four pages the trial court ordered be made available to Defendant; and the November 1994 allegation of neglect and improper discipline is contained in the records of the undisclosed files of GCDSS. In the report on the November 1994 allegation, R.H., five years old at the time, gives an account of what happened, stating Defendant "skinned his weenie back and hit it [seven times]." When the social worker asked him what "skinned" means, he stated "he doesn't know, his grandma told him what to say. . . . [N]o one has touched his privates . . . [and] he didn't know what his privates were until [the social worker] pointed to them."[1] G.H., six years old at the time, stated his grandma told him the social worker was coming and that "no one ever touched his privates. [Defendant] never touches him or [R.H.], not even for a bath."[2] In addition, there is information contained in the sealed documents that G.H.'s and R.H.'s grandmother was trying to obtain custody of G.H. and R.H. and Hampton believed the grandmother fabricated allegations of abuse in order to obtain custody.[3] Evidence contained in the files of GCDSS tends to show

---

1. R.H.'s statement could have been inquired into by Defendant on cross-examination of R.H. to attack R.H.'s character for truthfulness or untruthfulness. *See* N.C.G.S. § 8C-1, Rule 608(b) (1999).

2. G.H.'s statement to a social worker in 1994 may have been inquired into on cross-examination by Defendant. *See* N.C.G.S. § 8C-1, Rule 611(b) (1999).

3. This statement is relevant in cross-examining Hampton as to whether she believed the allegations were fabricated in this case and also is relevant to cross-examining G.H. concerning any influence on his testimony.

that false accusations were made against Defendant in 1994 and thus could properly be used to impeach the credibility of key witnesses for the State. *State v. Anthony*, 89 N.C. App. 93, 96-97, 365 S.E.2d 195, 197 (1988) (evidence of previous false accusation admissible to impeach credibility of witness). The Defendant was accordingly denied evidence favorable to him.

### *Materiality*

We must next determine if the favorable evidence is material either to Defendant's guilt or punishment. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494 (1985) (opinion of Blackmun, J).

In this case, G.H. and R.H. were the only witnesses to give an account of the events that happened in November 1997 and January 1998. The medical exam performed in April of 1998, almost four months after the alleged sexual assault occurred, was normal and Hampton testified she did not notice any discomfort in G.H. nor any blood or feces in his underwear. There was evidence presented that G.H. may have witnessed his uncle and another man having sex and evidence G.H. had been exposed to pornographic videos outside of Defendant's home. This evidence tends to rebut the State's theory that G.H. was too young to have fabricated the abuse by Defendant. Thus, there is a reasonable probability that had the records of GCDSS been disclosed to Defendant, the result of the trial would have been different. Accordingly, because this evidence is both favorable and material, Defendant should have been given access to this information and the trial court erred in denying that access.

### *Prejudicial error*

The failure of the trial court to turn over evidence to Defendant that was both favorable and material to Defendant does not guarantee Defendant a new trial, unless the failure was prejudicial to Defendant. *State v. Alston*, 307 N.C. 321, 339, 298 S.E.2d 631, 644 (1983). The violation of a defendant's constitutional rights is prejudicial unless this Court "finds that it was harmless beyond a reasonable doubt." N.C.G.S. § 15A-1443(b) (1999).

In this case, because we have determined evidence contained in the records of GCDSS was both favorable and material, Defendant's

constitutional right to have the evidence was violated. The State has the burden of showing the error was harmless beyond a reasonable doubt. *Id.* The State has made no argument on this issue and thus has failed to meet its burden. Accordingly, Defendant is entitled to a new trial.

We have carefully reviewed Defendant's other assignments of error and determine they are unlikely to arise upon retrial and, accordingly, are not addressed.

New trial.

Judges MARTIN and EDMUNDS concur.