STATE OF NORTH CAROLINA v. MICHAEL BRIAN JOHNSON

No. COA03-254

(Filed 17 August 2004)

**Discovery— sexual offense victim—sealed DSS file—favorable to defendant—material**

Undisclosed portions of a DSS file about abuse of a statutory sexual offense victim should have been disclosed to defendant, and his conviction was reversed for that error. The information provided an alternative explanation for the abuse and was sufficient to undermine confidence in the outcome of the trial.

Appeal by defendant from judgment entered 31 January 2002 by Judge Loto G. Caviness in Henderson County Superior Court. Heard in the Court of Appeals 2 December 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Tina A. Krasner, for the State.*

*Miles & Montgomery, by Mark Montgomery, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Michael Brian Johnson ("defendant") appeals his conviction for first-degree statutory sexual offense. For the reasons discussed herein, we hold that defendant is entitled to a new trial.

On 9 July 2001, defendant was indicted for first-degree statutory sexual offense. On 29 December 2002, defendant was also charged with first-degree rape by a bill of information. Prior to trial, defendant subpoenaed records compiled by the Henderson County Department of Social Services ("DSS") regarding the minor victim, Kelly.[1] DSS refused to provide defendant with Kelly's file, and on 24 January 2002, moved the trial court to examine the file *in camera* and redact certain information from the file. The trial court judge subsequently conducted an *in camera* inspection of the DSS file and determined that only a portion of the file was "relevant to the criminal cause and the defenses presented." The trial judge provided that portion of the file to the parties and thereafter sealed the remaining information of

---

1. To protect the identity of the minor child, this Court will refer to her by the pseudonym "Kelly."

the DSS file in the court file, to be reviewed by an appellate court were defendant to appeal.

The case proceeded to trial. The State's evidence against defendant consisted primarily of testimony by Kelly that defendant had engaged in inappropriate sexual activities with her and opinion testimony by two doctors who examined Kelly and concluded that Kelly had been sexually abused. Defendant presented evidence denying the charges. On 31 January 2002, the jury found defendant guilty of first-degree statutory sex offense and guilty of rape of a child under the age of thirteen. The trial court arrested judgment on the rape charge and sentenced defendant to 288 to 355 months incarceration for the statutory sex offense charge. Defendant appeals.

---

The dispositive issue on appeal is whether certain previously undisclosed portions of the DSS file should have been provided to defendant. Defendant argues that the undisclosed portions of the file contained information favorable and material to his case. We agree.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218 (1963). "Impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley,* 473 U.S. 667, 676, 87 L. Ed. 2d 481, 490 (1985). *See also Giglio v. United States,* 405 U.S. 150, 154, 31 L. Ed. 2d 104, 108 (1972). In determining whether evidence in the possession of the State should be disclosed to defendant, "[a] judge is required to order an *in camera* inspection and make findings of fact concerning the evidence at issue only if there is a possibility that such evidence might be material to guilt or punishment and favorable to the defense." *State v. Phillips,* 328 N.C. 1, 18, 399 S.E.2d 293, 301 (1991). "But just because defendant asks for an *in camera* inspection does not automatically entitle him to one. Defendant still must demonstrate that the evidence sought to be disclosed might be material and favorable to his defense." *State v. Thompson,* 139 N.C. App. 299, 307, 533 S.E.2d 834, 840 (2000). "[A]lthough asking defendant to affirmatively establish that a piece of evidence not in his possession is material might be a circular impossibility, [this Court] at least require[s] him to have a substantial basis for believing such evidence is material." *Id.* at 307, 533 S.E.2d at 840. "[I]f the judge, after the *in camera* examination, rules against the defendant on his motion, the judge should order the

sealed statement placed in the record for appellate review." *State v. Hardy*, 293 N.C. 105, 128, 235 S.E.2d 828, 842 (1977).

In *State v. McGill*, 141 N.C. App. 98, 101-02, 539 S.E.2d 351, 355 (2000) this Court concluded:

> On appeal, this Court is required to examine the sealed records to determine if they contain information that is "both favorable to the accused and material to [either his] guilt or punishment." If the sealed records contain evidence which is both "favorable" and "material," defendant is constitutionally entitled to disclosure of this evidence.

(quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 94 L. Ed. 2d 40, 57 (1987)) (other citations omitted). " 'Favorable' evidence includes evidence which tends to exculpate the accused, as well as 'any evidence adversely affecting the credibility of the government's witnesses.' " *McGill*, 141 N.C. App. at 102, 539 S.E.2d at 355 (quoting *United States v. Trevino*, 89 F.3d 187, 189 (4th Cir. 1996)). Evidence is "material" where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 87 L. Ed. 2d at 494. Furthermore, "[a] defendant is not entitled to a new trial based on trial errors unless such errors were material and prejudicial." *State v. Alston*, 307 N.C. 321, 339, 298 S.E.2d 631, 644 (1983). The violation of a defendant's constitutional rights is prejudicial unless this Court "finds that it was harmless beyond a reasonable doubt." N.C. Gen. Stat. § 15A-1443(b) (2003).

In the instant case, we have reviewed the DSS file sealed by the trial court in order to determine if information contained within the file is favorable and material to defendant's case. After reviewing the sealed documents, we conclude that there is favorable and material evidence in the file that should have been provided to defendant for review prior to trial.

The DSS file presented to the trial court for *in camera* inspection is composed of over 100 pages. The file contains medical documents, DSS case file documents, and various medical correspondences, as well as an indication that Jeremy,[2] Kelly's older brother, may have sexually abused her.

---

2. To protect the identity of the minor child, the Court will hereinafter refer to him by the pseudonym "Jeremy."

According to the DSS file, Jeremy is a mentally disturbed and troubled teen. Contained within the file is an intake report ("the intake report"), completed by Henderson County Child Protective Services employee T. Roberts ("Roberts"). The intake report states that on the afternoon of 15 November 2000, one of Kelly's family members contacted DSS because she was concerned for Kelly's safety. Roberts spoke with the family member on the phone and completed the intake report, marking the report for "immediate response." The family member stated that she believed that Jeremy was a threat to Kelly and that Kelly should not be left alone with him. The family member told Roberts that Jeremy is often left alone with Kelly and that she fears Jeremy will harm Kelly, even if unintentionally. The family member reported that Lee,[3] the children's biological mother, "leaves [Kelly] with [Jeremy] alone." The family member also reported that "[Jeremy] and a [seventeen-year-old] friend were doing wrestling holds on [Kelly] and she would cry for several hours." The family member further reported that she believed "[Lee] left [Kelly] alone with [Jeremy] while she went to look for [defendant] at a bar last Saturday night."

On the evening of 15 November 2000, Social Worker Patty Dalton ("Dalton"), met with Jeremy and Lee. A copy of Dalton's report of the meeting is contained within the DSS file. During their meeting, Jeremy told Dalton that he had been sent to Eckerd Camp, a reform school, because he had taken a dagger to his previous school. Jeremy stated that he had been physically aggressive to his sister and mother in the past. He also stated that he had physically fought with his mother, but said it had not happened "in a while." He also admitted that he had wrestled with Kelly and that Kelly had cried because he was "too rough with her."

The DSS file also contains information tending to show that Kelly had previously lied regarding her injuries. The file contains a report regarding Kelly's case that was produced by Social Worker M. Ballard ("Ballard"). On 22 March 2001, Kelly reported to Ballard that Barbara[4], Kelly's stepmother, had "whipped" Kelly "two times" while her father watched. Kelly stated that she had been "whipped" for "[m]essin' with the baby chickens." However, Ballard's report states that the next day, Kelly informed Ballard that "she had lied when she

---

3. To protect the identity of the minor children, the Court will hereinafter refer to the children's mother by the pseudonym "Lee."

4. To protect the identity of the minor children, the Court will hereinafter refer to the children's stepmother by the pseudonym "Barbara."

said she had gotten marks from a whipping at [her father] and [Barbara's] house." Kelly stated that "[her father and Barbara] had never hit her with a belt [and that] she doesn't know how she got these marks."

The State stresses in its brief that the DSS file offers "no new material evidence on this point," because Kelly's credibility was sufficiently challenged at trial by testimony from Jeremy and Lee. However, we note that Jeremy and Lee testified only to Kelly's truthfulness in her interactions with her family. Jeremy and Lee did not testify to Kelly's truthfulness in her interactions with the social workers investigating her alleged abuse, a point we find particularly germane to defendant's trial for first-degree statutory sex offense.

The information in the DSS file most favorable to defendant's case is the comments made by Lee indicating that she may have caused some of Kelly's injuries, and that Jeremy may have sexually abused Kelly. On 5 June 2001, Lee met with Social Worker G. Massicotte ("Massicotte") to discuss Kelly's Child Medical Evaluation ("CME"). A copy of Massicotte's report is contained within the DSS file. Massicotte reported that "[Lee] stated . . . that the scar mentioned in the [CME] could possibl[y] be the result of [Lee] scratching [Kelly] with her finger nail while [Lee] was putting ointment on [Kelly] in the vagina area where the scar is located." Lee also stated to Massicotte that "there was a remote possibility that [Jeremy] could have done something to [Kelly]." Lee told Massicotte that "[Jeremy] would have a yeast infection at the same time [Kelly] would have a yeast infection and that they would both clear up at the same time."

In sum, the DSS file indicates that Jeremy has a history of physical violence, that he and Kelly had yeast infections at the same time, and that Lee left Jeremy and Kelly in the house alone on several occasions. The file indicates that Kelly, the State's leading witness against defendant, told a social worker that she had lied in one of her previous meetings with the social worker. The file also indicates that Lee believes she could have caused at least one of Kelly's injuries herself, and that it is possible that Jeremy had sexually abused Kelly.

Because the information contained within the DSS file provides an alternative explanation for Kelly's abuse, we conclude that the information contained within the file is favorable to defendant's case. Furthermore, because we also conclude that the information is sufficient to undermine the confidence in the outcome of the trial, we

further conclude that the information is material, in that had the information been available for presentation at trial, a "reasonable probability" exists that "the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 87 L. Ed. 2d at 494. Therefore, because the information contained within the file was favorable and material to defendant's case, we hold that defendant was constitutionally entitled to disclosure of the contents of the file, and that it was prejudicial error for the trial court to refuse to disclose the information to defendant. Accordingly, we reverse defendant's convictions and remand the case for a new trial. Prior to defendant's trial on remand, the trial court should disclose to defendant the information contained within the DSS file.

Reversed and remanded.

Judges WYNN and McCULLOUGH concur.