STATE OF NORTH CAROLINA v. LORI SHANNON ICARD

No. COA07-610

(Filed 6 May 2008)

1. **Search and Seizure— Fourth Amendment—evidence seized from defendant's purse—show of authority—consent**

The trial court erred in a simple possession of methamphetamine case by failing to find that the search of defendant's purse was governed by the Fourth Amendment because: (1) combined with the other circumstances of the pertinent night, the officer's actions were a show of authority such that the encounter lost its

---

consensual nature when defendant had shown she was not willing to listen to the officer's questions and had essentially refused to cooperate by ignoring the officer's taps on the car window, and the officer opened the door and insisted that defendant produce identification, thus transforming the encounter from the mere approach of an officer in a public place into a seizure of defendant within the meaning of the Fourth Amendment; (2) the officer did not stop the pertinent vehicle based on a traffic violation or some reasonable suspicion that its occupants were engaged in unlawful activity; (3) at the moment the officer opened the passenger door of the vehicle and began questioning defendant, there was still no evidence that either defendant or the driver was engaged in any unlawful activity; (4) the only evidence of a crime came later from the search of defendant's purse and the lawful search of the vehicle subsequent to the driver's arrest for drug possession and assault on a police officer; and (5) in light of the totality of circumstances surrounding the incident, a reasonable person in defendant's position would not have believed that she was free to leave, although the vehicle could have left the parking lot by driving forward, when to do so would have placed the driver in violation of traffic laws since the officer had his license, and any passenger, particularly a female, would have felt uncomfortable or unsafe by attempting to leave the parking lot on foot at 12:30 am in an area known for drug activity and prostitution. Having found that the Fourth Amendment did apply to the search of defendant's purse, the case is remanded to the trial court for additional findings as to the voluntariness of defendant's consent to the search.

**2. Discovery— violation—providing exculpatory information in middle of trial—failure to show prejudicial error**

The trial court did not err in a simple possession of methamphetamine case by failing to dismiss the case or order a new trial after the State allegedly failed to provide defendant with exculpatory information in a timely manner because: (1) although the State conceded it had committed a discovery violation by failing to disclose an officer's handwritten notes until the middle of trial, the violation was not a violation under *Brady*, 373 U.S. 83 (1963), nor was the discovery violation prejudicial to defendant when defense counsel was allowed the final argument at trial as well as the opportunity to impeach the officer with the notes; (2) the transcript reflects that defense counsel had adequate time to pre-

pare and change his cross-examination with respect to the caliber of bullets found in defendant's purse, and therefore he had the same opportunity concerning the location of the methamphetamine; (3) defense counsel could have conducted its own investigation into where the methamphetamine was when it was recovered since counsel was aware there was some confusion as to its location and that the same officer was going to be a witness; and (4) the discovery violation was not sufficiently material or prejudicial as to undermine confidence in the outcome of the trial when defendant had the handwritten notes while the officer was still being cross-examined.

**3. Evidence— location of methamphetamine—statement made outside presence of jury—general confusion**

The trial court did not commit plain error in a simple possession of methamphetamine case by failing to order a new trial or to strike evidence that the prosecutor admitted that he reasonably believed to be false regarding the location of the methamphetamine because, given that the prosecutor's statement was made outside the presence of the jury, and the record and transcript reflect general confusion as to where the methamphetamine was recovered, the trial court acted properly in allowing the officer to testify and clarify where each piece of evidence was recovered.

Judge BRYANT concurring in part and dissenting in part.

Appeal by defendant from judgment entered 1 December 2006 by Judge Robert C. Ervin in Superior Court, Catawba County. Heard in the Court of Appeals 8 January 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Marc X. Sneed, for the State.*

*Brock, Payne & Meece, P.A., by C. Scott Holmes, for defendant-appellant.*

WYNN, Judge.

In determining whether Fourth Amendment protections apply to a search or seizure by the police, we consider whether, under the totality of the circumstances, a reasonable person would have felt that she was not free to decline the police request or otherwise ter-

minate the encounter with them.[1] Here, because we find that a reasonable person in Defendant Lori Shannon Icard's position would not have felt "free to . . . terminate the encounter" with the police, we hold that the police search of her purse was governed by the Fourth Amendment. However, noting that Defendant also consented to the search, we remand to the trial court for findings as to the voluntariness of Defendant's consent.

At 12:30 a.m. on 21 September 2004, Officer Curt Moore of the Maiden Police Department noticed a pickup truck parked in the lot adjacent to the Fairview Market. After checking the front of the building, Officer Moore drove by the front of the pickup truck, noticed a silhouette in the driver's seat, and activated his blue flashing strobe lights. Thereafter, he approached the pickup truck and asked the individual in the driver's seat, later identified as Carmen Coleman, for his license and registration. Officer Moore asked Mr. Coleman why he was parked at the Market; Mr. Coleman responded that he had come from a neighboring area to meet a friend. After engaging in a short conversation with Mr. Coleman about this answer, Officer Moore returned to his own vehicle to verify Mr. Coleman's license and registration information. Officer Moore acknowledged at trial that the pickup truck was not illegally parked and was violating no traffic laws at the time he approached the vehicle; he likewise confirmed that his check of Mr. Coleman's license and registration returned no outstanding warrants for Mr. Coleman or problems with the ownership of the truck.

In response to Officer Moore's request for back-up assistance, made while he was checking Mr. Coleman's license and registration, Officer Darby Hedrick soon arrived and parked his marked vehicle on the right side of the pickup truck, with his headlights and take-down spotlights illuminating the passenger side of the truck. At that point, Officer Moore turned off his blue flashing lights and approached the passenger side of the truck.

When Defendant, sitting in the passenger seat, failed to respond to Officer Moore's repeated taps on the passenger-side window, Officer Moore opened the passenger-side door and asked her for identification. Defendant stated that she did not have any identification with her, but Officer Moore noticed a bag at her feet and asked if she had identification in the bag. Defendant then picked up the purse and unzipped it, revealing a wallet which contained her identification

---

1. *State v. Brooks*, 337 N.C. 132, 142, 446 S.E.2d 579, 586 (1994).

STATE v. ICARD

[190 N.C. App. 76 (2008)]

card. Officer Moore then asked Defendant to step to the rear of the vehicle and for permission to look through her purse. Defendant agreed and got out of the pickup truck and moved to its rear; in searching her purse, Officer Moore found several bullets and a piece of glass that appeared burned at one end. Officer Moore testified at trial that he also found a clear plastic bag with a stamp of a skunk on the outside in Defendant's purse; the substance inside the bag later tested positive for methamphetamine.

While standing with Defendant at the rear of the pickup truck, Officer Moore saw Mr. Coleman moving in the cab of the pickup, and he went to investigate. After more questioning, Mr. Coleman gave Officer Moore a lockblade clip-type knife that was in his pocket, as well as a clear plastic bag containing marijuana and another clear bag containing a white- and tan-colored powder. An altercation between Mr. Coleman and Officer Moore then ensued, and Officer Hedrick assisted Officer Moore in subduing Mr. Coleman. A subsequent search of the pickup truck turned up glass pipes used to inhale controlled substances, a crack pipe, a digital scale, a loaded .357 Magnum revolver, and a clear plastic bag with what was later determined to be residue from methamphetamine on the inside.

. Defendant was initially indicted on charges of resisting a public officer, carrying a concealed weapon, possession with intent to sell and deliver cocaine, possession with intent to· sell and deliver methamphetamine, possession with intent to sell and deliver marijuana, and possession of drug paraphernalia. Prior to trial, the State dismissed the cocaine-related charge. At trial, upon Defendant's motion at the close of the State's evidence, the trial court dismissed the concealed weapon and marijuana-related charges, as well as the charge of possession with intent to sell and deliver methamphetamine. However, the State was allowed to proceed with the lesser-included charge of simple possession of methamphetamine, of which Defendant was found guilty by the jury. The jury also found Defendant not guilty of the charges of resisting a public officer and of possession of drug paraphernalia. Upon the jury's conviction for simple possession, the trial court sentenced Defendant to a term of five to six months' imprisonment, which was then suspended, as well as twenty-four months of supervised probation, sixty hours of community service, a fine, and restitution.

Defendant now appeals, arguing that the trial court erred by (I) denying her motion to suppress and instead allowing evidence from an unlawful search and seizure; (II) failing to dismiss the case or to

order a new trial after the State did not provide her with exculpatory information in a timely manner; and (III) failing to order a new trial or to strike evidence that the prosecutor admitted that he reasonably believed to be false.

I.

[1] In her first argument, Defendant contends that the trial court erred by failing to suppress evidence that was obtained through the search of her purse, as the search and seizure violated the protections afforded by the Fourth Amendment.

Our standard of review to determine whether a trial court properly denied a motion to suppress is "whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Cockerham*, 155 N.C. App. 729, 736, 574 S.E.2d 694, 699 (citing *State v. Wynne*, 329 N.C. 507, 522, 406 S.E.2d 812, 820 (1991)), *disc. review denied*, 357 N.C. 166, 580 S.E.2d 702 (2003). The trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (citations omitted). The conclusions of law, however, are reviewed *de novo* by this Court. *State v. Brooks*, 337 N.C. 132, 141, 446 S.E.2d 579, 585 (1994).

In the instant case, Defendant challenges both findings of fact and the trial court's conclusions of law that Defendant was in a public place, such that Officer Moore's approach and subsequent interactions with Defendant did not fall within the Fourth Amendment's protections against unreasonable search and seizure. *See, e.g., United States v. Drayton*, 536 U.S. 194, 200, 153 L. Ed. 2d 242, 251 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."); *Brooks*, 337 N.C. at 142, 446 S.E.2d at 585-86 ("The Supreme Court of the United States recently reaffirmed that police officers may approach individuals in public to ask them questions and even request consent to search their belongings, so long as a reasonable person would understand that he or she could refuse to cooperate." (citations omitted)). According to our state Supreme Court, "[t]he test for determining whether a seizure has occurred is whether under the totality of the circumstances a reasonable person would feel that he was not free to decline the officers' request or otherwise terminate the encounter." *Id.*, 446 S.E.2d at 586

STATE v. ICARD

[190 N.C. App. 76 (2008)]

(citations omitted). Thus, our task is to determine whether the circumstances on the night of 21 September 2004 were such that a reasonable person would have felt free to decline Officer Moore's requests and to leave the premises.

Under the facts of this case, Officer Moore did not need probable cause or reasonable suspicion to approach the pickup truck, which was parked in a public place. Nor did he need probable cause or reasonable suspicion to ask Mr. Coleman and Defendant questions, for their identification, or even for consent to search their belongings, if they were "willing to listen." *Drayton*, 536 U.S. at 200, 153 L. Ed. 2d at 251. Nevertheless, Officer Moore was barred from "induc[ing] cooperation by coercive means." *Id.*; *see also Brooks*, 337 N.C. at 141, 446 S.E.2d at 585 ("[C]ommunication between the police and citizens involving no coercion or detention . . . [falls] outside the compass of the Fourth Amendment." (citation omitted)). More specifically, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *State v. Campbell*, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005) (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398 (1991) (citations omitted)), *cert. denied*, 547 U.S. 1073, 164 L. Ed. 2d 523 (2006); *see also Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398 ("The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.").

The evidence offered at trial in the instant case supports each of the trial court's findings of fact as to the chain of events that unfolded from the time that Officer Moore pulled his vehicle behind the pickup truck at the Fairview Market until Defendant and Mr. Coleman were arrested. As noted by the trial court, the Fairview Market "is located in a high crime area where numerous complaints of drug activity and prostitution have been received by law enforcement authorities." Moreover, although the pickup truck "was not being operated in violation of any traffic laws[,]" Officer Moore parked his vehicle behind the pickup truck, such that it could not back up but "could have driven away by going forward[,]" and he had his headlights and blue flashing visor lights on at that time. Officer Moore requested, and received, Mr. Coleman's license and registration, which his *voir dire* testimony showed that he kept for the duration of his encounter with Mr. Coleman and Defendant. The blue flashing lights remained on until Officer Moore asked for Defendant's identification, after Officer Hedrick had arrived and parked his marked vehicle such that his

headlights and take-down spotlights were shining on the passenger side of the pickup truck.

Most notably, as found by the trial court in its order, Officer Moore knocked twice on the passenger-side window of the pickup truck, where Defendant was sitting; she did not respond either time. At that point, Officer Moore "opened the passenger door of the truck." He told Defendant who he was, "which she could see [he] was in uniform," and "asked her if she had any type of identification on her." She answered that she did not, because it was in her other purse; however, seeing a handbag at Defendant's feet in the truck, Officer Moore "asked her if there was some identification in that purse." After unzipping the purse and "fumbling through" a wallet on top, Defendant produced a North Carolina identification card with her name on it. Officer Moore then "asked [Defendant], if she would, to step to the rear of the vehicle with Officer Hedrick and [himself]."

Combined with the other circumstances of that night, we find these actions to be a "show of authority," *Campbell*, 359 N.C. at 662, 617 S.E.2d at 13, such that this encounter "los[t] its consensual nature." *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398. By ignoring Officer Moore's taps on the window, Defendant had shown that she was not "willing to listen" to Officer Moore's questions, *Drayton*, 536 U.S. at 200, 153 L. Ed. 2d at 251, and had essentially "refuse[d] to cooperate." *Brooks*, 337 N.C. at 142, 446 S.E.2d at 585-86. Officer Moore's opening the door and insistence that Defendant produce identification were a show of authority that transformed this encounter from " 'the mere approach of police officers in a public place,' " *id.* at 141, 446 S.E.2d at 585 (citation omitted), into a seizure of Defendant within the meaning of the Fourth Amendment. As noted by this Court in a previous case, "[w]ere we to conclude otherwise, we would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches which the Fourth Amendment is specifically designed to protect against." *State v. Fleming*, 106 N.C. App. 165, 171, 415 S.E.2d 782, 786 (1992) (citing *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968)).

Had Officer Moore stopped the pickup truck due to a traffic violation or some reasonable suspicion that its occupants were engaged in unlawful activity, he would have been "authorized to take such steps as reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235, 83 L. Ed. 2d 604, 616 (1985). Indeed, had

he had probable cause for a stop, Officer Moore could have ordered the driver, Mr. Coleman, to exit the vehicle, *State v. McGirt*, 122 N.C. App. 237, 239, 468 S.E.2d 833, 834-35 (1996), *aff'd per curiam*, 345 N.C. 624, 481 S.E.2d 288, *cert. denied*, 522 U.S. 869, 139 L. Ed. 2d 121 (1997), or even ordered Defendant, a passenger, to exit despite having no probable cause or reasonable suspicion with respect to her. *State v. Pulliam*, 139 N.C. App. 437, 440, 533 S.E.2d 280, 283 (2000). Likewise, had Officer Moore had a "reasonable suspicion based on articulable facts under the circumstances" that Defendant, as a passenger, was armed and dangerous, he would have been constitutionally permitted to conduct a pat-down safety search of Defendant. *Id.* at 441, 533 S.E.2d at 283.

However, Officer Moore had no probable cause or reasonable suspicion when he approached the pickup truck, such that these cases are inapplicable to the facts at hand. Likewise, at the moment that Officer Moore opened the passenger door of the pickup truck and began questioning Defendant, there was still no evidence that either Defendant or Mr. Coleman was engaged in any unlawful activity. Indeed, the only evidence of a crime came later, from the search of Defendant's purse and the lawful search of the pickup truck subsequent to Mr. Coleman's arrest for drug possession and assault on a police officer.

As found by the trial court, the pickup truck "was not being operated in violation of any traffic laws." Officer Moore's check of Mr. Coleman's license and registration showed no outstanding warrants or issues with ownership of the truck; he also maintained possession of Mr. Coleman's license and registration throughout the encounter. Additionally, his blue flashing lights had remained on until another marked police vehicle parked with its headlights and take-down spotlights directed at the passenger side of the truck. Although the pickup truck, blocked from behind by Officer Moore's vehicle, could have left the parking light by driving forward, to do so would have placed Mr. Coleman in violation of traffic laws, as he would have been driving without a license. At 12:30 a.m. in an area known for drug activity and prostitution, any passenger, particularly a female, would undoubtedly have felt uncomfortable or unsafe by attempting to leave the parking lot on foot.

Accordingly, in light of the totality of the circumstances surrounding the incident, we conclude that a reasonable person in Defendant's position would not have believed that she was free to leave. *See Campbell*, 359 N.C. at 662, 617 S.E.2d at 13 ("Seizure of a

person within the meaning of the Fourth Amendment occurs only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (quotation and citation omitted)); *see also Bostick*, 501 U.S. at 437, 115 L. Ed. 2d at 400 ("We have consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."). As such, Defendant was entitled to the protections of the Fourth Amendment at the time Officer Moore asked her to exit the pickup truck.

Respectfully, contrary to the assertions of the dissent, we reach this conclusion based on the totality of the circumstances of the encounter between Defendant and Officer Moore, not solely on Officer Moore's words and actions in approaching Defendant and requesting that she produce identification. Officer Moore's vehicle, with its blue lights flashing, was parked behind the pickup truck. Moreover, even if the pickup truck could have pulled forward to exit the parking lot, Officer Moore maintained possession of Mr. Coleman's license and registration for the duration of this encounter, essentially preventing him from leaving. Another officer arrived and parked his vehicle to the right of the truck, with his takedown lights shining on the passenger side. Combined with Officer Moore's words and actions in opening the door to the pickup truck after Defendant had essentially refused to cooperate with his requests for information, we conclude that an objective evaluation of the totality of these circumstances "would have conveyed . . . to a reasonable person[,]" including one who was a passenger in the pickup truck, that "[s]he was being ordered to restrict [her] movement." *California v. Hodari*, 499 U.S. 621, 628, 113 L. Ed. 2d 690, 698 (1991). As such, the police in this instance "restrained the liberty of a citizen," *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398, and the encounter was subject to the protections of the Fourth Amendment.

Nevertheless, we observe that the record and transcripts before us indicate that Officer Moore asked Defendant if he could search her purse, and she agreed. A police officer may search an individual or her property at any time with the person's consent. *State v. Graham*, 149 N.C. App. 215, 218, 562 S.E.2d 286, 288 (2002), *disc. review denied and appeal dismissed*, 356 N.C. 685, 578 S.E.2d 315 (2003). However, our United States Supreme Court has also noted that, " '[c]onsent' that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would pre-

fer to refuse." *Bostick*, 501 U.S. at 438, 115 L. Ed. 2d at 401. Further, "[t]here must be a clear and unequivocal consent before a defendant can waive his constitutional rights." *State v. Pearson*, 348 N.C. 272, 277, 498 S.E.2d 599, 601 (1998) (citation omitted). "To be voluntary, it must be shown that the waiver was free from coercion, duress or fraud, and not given merely to avoid resistance." *State v. Little*, 270 N.C. 234, 239, 154 S.E.2d 61, 65 (1967) (citation omitted). The burden is on the State to show that consent was voluntary. *State v. Morocco*, 99 N.C. App. 421, 429, 393 S.E.2d 545, 549 (1990). As held by our state Supreme Court, voluntariness is a question of fact to be determined from all of the surrounding circumstances. *State v. Williams*, 314 N.C. 337, 344, 333 S.E.2d 708, 714 (1985).

Here, the trial court concluded in its order denying Defendant's motion to suppress that the search was not subject to the provisions of the Fourth Amendment because it was the mere approach of police officers in a public place. *Campbell*, 359 N.C. at 662, 617 S.E.2d at 13. As such, the trial court did not include findings of fact as to whether Defendant's consent to search her purse was voluntary or coerced. Having found that the Fourth Amendment did apply to the search of Defendant's purse, we remand this matter to the trial court for additional findings as to Defendant's consent. *See General Specialties Co. v. Nello L. Teer Co.*, 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979) (emphasizing that, where a trial judge sits as the trier of the facts, the appellate court cannot substitute itself for the trial judge in this task).

II.

[2] Defendant next argues that the trial court erred by failing to dismiss the case or to order a new trial after the State did not provide her with exculpatory information in a timely manner. She contends that this discovery violation, conceded by the State, violated her right to due process and therefore warranted a dismissal or new trial. We disagree.

Under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218 (1963). Evidence is "favorable" if it "tends to exculpate the accused, as well as 'any evidence adversely affecting the credibility of the government's witnesses.'" *State v. McGill*, 141 N.C. App. 98, 102, 539 S.E.2d 351, 355 (2000) (quoting *United States*

*v. Trevino,* 89 F.3d 187, 189 (4th Cir. 1996)). Further, evidence is "material" where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494 (1985); *see also State v. Strickland,* 346 N.C. 443, 456, 488 S.E.2d 194, 202 (1997), *cert. denied,* 522 U.S. 1078, 139 L. Ed. 2d 757 (1998). However, "[a] defendant is not entitled to a new trial based on trial errors unless such errors were material and prejudicial." *State v. Alston,* 307 N.C. 321, 339, 298 S.E.2d 631, 644 (1983). The State must demonstrate that the violation of a defendant's constitutional rights was harmless beyond a reasonable doubt, or the violation is presumed to have been prejudicial. N.C. Gen. Stat. § 15A-1443(b) (2005).

Here, although the State conceded it had committed a discovery violation by failing to disclose Officer Moore's handwritten notes until the middle of the trial, the violation was not a *Brady* violation. *See, e.g., State v. Shedd,* 117 N.C. App. 122, 124, 450 S.E.2d 13, 14 (1994) ("Because the evidence was disclosed at trial, we find no *Brady* violation."). Nor was the discovery violation prejudicial to Defendant. The trial court allowed defense counsel the final argument at trial, regardless of whether Defendant put on any evidence of her own, as well as the opportunity to impeach Officer Moore with his handwritten notes. Indeed, defense counsel used the notes to highlight the inconsistencies between Officer Moore's testimony and his earlier notes as to the caliber of the bullets found in Defendant's purse. For some reason, defense counsel elected not to do the same with respect to inconsistencies as to where the methamphetamine that was recovered was found. Thus, the transcript reflects that defense counsel had adequate time to prepare and change his cross-examination with respect to the caliber of the bullets; he must therefore have had the same opportunity concerning the location of the methamphetamine.

Moreover, defense counsel was also aware prior to trial that there was some confusion as to where the methamphetamine was located and that Officer Moore was going to be a witness. As noted by the trial court, defense counsel could therefore have conducted his own investigation into where the methamphetamine was when it was recovered. Given that Defendant had the handwritten notes while Officer Moore was still being cross-examined, we find that the discovery violation was not sufficiently material nor prejudicial as to

undermine confidence in the outcome of the trial. *Alston*, 307 N.C. at 339, 298 S.E.2d at 644; *Bagley*, 473 U.S. at 682, 87 L. Ed. 2d at 494. Accordingly, this assignment of error is overruled.

## III.

**[3]** Finally, Defendant argues that the trial court plainly erred by failing to order a new trial or to strike evidence that the prosecutor admitted that he reasonably believed to be false. Specifically, Defendant objects to the prosecutor's statement, made outside the presence of the jury, as to his "understanding from speaking with the officer that the evidence will show that the methamphetamine was in a container located in a common area of . . . the front seat of the vehicle[,]" when Officer Moore later testified that the methamphetamine was found in a small pouch located in Defendant's purse. We disagree.

The plain error rule is "always to be applied cautiously and only in the exceptional case where, after reviewing the entire record," the error is found to have been "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (internal citation and quotation omitted). Here, given that the prosecutor's statement was made outside the presence of the jury, and the record and transcript reflect general confusion as to where the methamphetamine was recovered, we find that the trial court acted properly in allowing Officer Moore to testify and clarify where each piece of evidence was recovered. This assignment of error is overruled.

Remanded in part; no error in part.

Judge ELMORE concurs.

Judge BRYANT concurs in part and dissents in part in a separate opinion.

BRYANT, Judge concurring in part and dissenting in part.

The majority holds that the police search of Defendant's purse was governed by the Fourth Amendment. However, because I find the search was not governed by the Fourth Amendment, I respectfully dissent.

"A seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a rea-

sonable person would feel free to disregard the police and go about his business the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434, 111 L. Ed. 2d 389, 398 (1991) (citation and quotation omitted). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Id.* (citation and quotation omitted). Communication between the police and citizens involving no coercion or detention falls outside the compass of the Fourth Amendment. *State v. Sugg*, 61 N.C. App. 106, 108, 300 S.E. 3d 248, 250 (1983). "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *California v. Hodari D.*, 499 U.S. 621, 628, 113 L. Ed. 2d 690, 698 (1991).

The majority concludes the search of Defendant's purse was governed by the Fourth Amendment because Officer Moore's "opening the door and insistence that Defendant produce identification were a show of authority" transforming the encounter into a seizure of Defendant. The majority rests its conclusion that Office Moore's opening the door and requesting Defendant's identification was a show of force due to the other circumstances that night which placed Defendant in a position where "at 12:30 a.m., in an area known for drug activity and prostitution, any passenger, particularly a female, would undoubtedly have felt uncomfortable or unsafe by attempting to leave the parking lot on foot." However, the inquiry regarding the totality of circumstances for Fourth Amendment purposes is not whether a reasonable person was uncomfortable leaving because of the surrounding environment, but whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," *State v. Campbell*, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005), because of "the officer's words and actions," *Hodari D.*, 499 U.S. at 628, 113 L. Ed. 2d at 698.

Officer Moore's words and actions in this case would not cause a reasonable person to believe he was not free to leave. After back-up assistance arrived, Officer Moore approached the passenger-side of the pickup truck and tapped on the window. When Defendant ignored his taps on the window, Officer Moore opened the passenger-side door and asked Defendant to produce identification. Although persistent, at no time during the beginning of his encounter with Defendant did Officer Moore' actions or words constitute a show of

authority amounting to a restraint on Defendant's liberty. For these reasons, I respectfully dissent on the issue of whether the search of Defendant's purse was within the realm of the Fourth Amendment.

I concur with the majority as to the remaining issues raised by Defendant.