An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-373

Filed 3 December 2025

Pitt County, Nos. 23CR001163-730, 23CR284161-730, 23CR284168-730

STATE OF NORTH CAROLINA

v.

BRANDON JOSEPH CREIGHTON, Defendant.

Appeal by defendant from judgment entered 25 April 2024 by Judge Marvin K. Blount, III, in Pitt County Superior Court. Heard in the Court of Appeals 14 October 2025.

*W. Michael Spivey for defendant-appellant.*

*Attorney General Jeff Jackson, by Assistant Attorney General John W. Congleton, for the State.*

DILLON, Chief Judge.

Defendant Brandon Joseph Creighton appeals from the trial court's judgment finding him guilty of felony serious injury by vehicle, driving while impaired, reckless driving, failure to maintain lane control, and felony death by vehicle.

First, Defendant argues the trial court violated his constitutional right to confront a witness. We agree, but we conclude the error was harmless beyond a

reasonable doubt. Second, Defendant argues the trial court plainly erred by failing to instruct the jury on intervening negligence. We disagree. Third, Defendant argues the trial court erred by denying Defendant's motion to dismiss the charges of felony death by vehicle and felony serious injury by vehicle. We disagree.

Accordingly, for the reasoning below, we conclude Defendant received a fair trial, free from reversible error.

## I. Background

This matter stems from a multi-vehicle traffic accident that occurred on a day in April 2023 around noon on Highway 264 in Pitt County resulting in serious injuries and a death. Defendant was indicted with several crimes based on the accident, including felony death by motor vehicle. This matter came on for trial in April 2024.

The evidence at trial tended to show as follows: Defendant and Arianna King were driving their respective vehicles on the same highway, in the same direction. Defendant was driving his vehicle in the right, northbound lane of the highway; and Ms. King was driving her vehicle in the left, northbound lane.

At some point, Defendant began moving his vehicle into the Ms. King's lane of travel, the left, northbound lane. As he did so, the back portion of his vehicle clipped the front portion of Ms. King's vehicle. This collision caused Ms. King to lose control of her vehicle, resulting in her vehicle crossing over the median and colliding with a southbound vehicle operated by Gene Herring. As a result of the collision, Mr. Herring suffered serious injuries, while his passenger, Delores Pearce, was killed.

There was evidence that Defendant had been drinking just prior to and was impaired at the time of the accident.

The jury returned verdicts finding Defendant guilty of felony death by vehicle (for Ms. Pearce's death), felony serious injury by vehicle (for Mr. Herring's injuries), driving while impaired, reckless driving, and failure to maintain lane control. The trial court entered judgment consistent with the jury's verdicts. Defendant appeals.

## II. Analysis

Defendant makes three arguments on appeal, which we address in turn.

### A. Confrontation Clause

Three of the crimes for which Defendant was convicted—namely, felony death by vehicle, felony serious injury by vehicle, and driving while impaired—required the State to prove Defendant was engaged in "impaired driving" at the time of the accident. *See* N.C.G.S. §§ 20-141.4(a1); 20-141.4(a3); 20-138.1(a) (2023). The State may prove "impaired driving" in one of two ways, *either* that the person was driving "[w]hile under the influence of an impairing substance" *or* "[a]fter having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more." N.C.G.S. § 20-138.1(a).

On appeal, Defendant argues his rights under the Confrontation Clause of the federal constitution were violated when a State expert was allowed to testify concerning the results of a test *performed by another analyst* which showed Defendant had a blood alcohol concentration ("BAC") greater than 0.08. We agree.

However, for the reasoning below, we hold the error was harmless beyond a reasonable doubt.

1. The trial court erred, and the error was constitutional in nature.

We review alleged violations of constitutional rights *de novo*. *State v. Flow*, 384 N.C. 528, 546 (2023).

Under both our federal and state constitutions, criminal defendants have the right to confront witnesses against them. U.S. Const. amend. VI; N.C. Const. art. I, § 23. However, the Confrontation Clause applies only to testimonial hearsay, "statements made by people not in the courtroom[.]" *State v. Lester*, 387 N.C. 90, 91 (2025) (quoting *Smith v. Arizona*, 602 U.S. 779, 784 (2024)).

A report, such as a BAC report, is testimonial when it is sought for obtaining evidence against a *specifically identified* person and created solely for an "evidentiary purpose" to aid a police investigation of that person. *See, e.g.*, *Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011) (holding a BAC report was testimonial when the defendant's blood had been seized for the sole purpose of testing his alcohol content); *State v. Clark*, 296 N.C. App. 718, 723 (2024) ("[L]ab reports created *solely* for an evidentiary purpose, made in aid of a police investigation, [ ] rank as testimonial." (second alteration and emphasis in original)).

Conversely, a report might not be testimonial when used for the purpose of identifying a culprit, when no suspect/defendant has yet been identified, *see, e.g.*, *Williams v. Illinois*, 567 U.S. 50, 58 (2012) (holding a rape kit report was not

- 4 -

testimonial where it was "produced before any suspect was identified" and "[t]he report was sought not for the purpose of obtaining evidence to be used against [the] petitioner, who was not even under suspicion at the time, but for the purpose of finding a rapist who was on the loose"), or to identify DNA other than that of the victim's, *e.g.*, *State v. Tate*, 918 S.E.2d 886, 902 (N.C. Ct. App. 2025) (holding a rape kit was not testimonial when completed "for the sole purpose of identifying the potential presence of any DNA other than [the victim's] own, not to identify a potential suspect").

Here, Defendant was known to law enforcement as the person who caused the accident. The BAC report was prepared as part of the investigation *of him*. And the testifying expert relied upon the statements in the report by the absent analyst. Accordingly, we conclude Defendant's constitutional rights under the Confrontation Clause were violated by the testimony of the substitute analyst.

2. The error was harmless, beyond a reasonable doubt.

For preserved, non-constitutional errors, it is *the defendant* who bears the burden on appeal of showing "*a reasonable possibility* [exists] that, had the error in question not been committed, a different result would have been reached [in] the trial[.]" N.C.G.S. § 15A-1443(a) (2023) (emphasis added).

However, for preserved errors which violate the defendant's rights under the federal constitution, it is *the State* who bears the burden to demonstrate "beyond a reasonable doubt, that the error was harmless." *Id.* at (b). This standard was codified

by our General Assembly in 1977 in response to *Chapman v. California*, 386 U.S. 18, a 1967 decision from the United States Supreme Court. *Id.* (Official Commentary).

In any event, there is case law which suggest the State's burden for preserved, constitutional errors and a defendant's burden for preserved, non-constitutional errors, are of the same degree—namely, whether a "reasonable possibility" exists a different result would have occurred, but for the error—*except* for which party bears the burden. For instance, our Supreme Court, quoting *Chapman*, has explained the State meets its burden of demonstrating a preserved, constitutional error is harmless beyond a reasonable doubt by showing there exists no "*reasonable possibility* that the evidence complained of might have contributed to the conviction." *State v. Diaz*, 372 N.C. 493, 505 (2019) (quoting *Chapman*, 386 U.S. at 487) (emphasis added). *See also State v. Soyars*, 332 N.C. 47, 58 (1992). Our Court has held a defendant fails to meet his burden of showing prejudicial error where the "error in admitting evidence is harmless beyond a reasonable doubt[.]" *State v. Knight*, 53 N.C. App. 513, 514 (1981).

Therefore, while whether an error is reversible may depend on which party bears the burden, the issue largely depends on the strength of the *other* evidence. As our Supreme Court has explained, the issue is whether "the minds of an average jury would not have found the remaining evidence less persuasive had the erroneous evidence been excluded." *State v. Pabon*, 380 N.C. 241, 256 (2022) (citation omitted) (cleaned up).

In sum, based on our case law, if based on the *other* evidence, we are able to

conclude *no reasonable possibility exists* the result would have been different but for the "preserved error" evidence being admitted, it matters not who bears the burden. In either case, the defendant does not get a new trial. But if we are able to determine in such case a reasonable possibility *does exist* the result would have been different but for the "preserved error" evidence being admitted, it again matters not who bears the burden on appeal. In either case, the defendant *is* entitled to a new trial.

It is, therefore, only in those cases where the strength of the other evidence, compared to the "preserved error" evidence, falls right on the margin—where we cannot determine, one way or the other, whether a reasonable possibility exists a different result would have occurred—that it matters which party bears the burden. In such cases, the State will not be able to show the error was harmless beyond a reasonable doubt because we would not be convinced no reasonable possibility exists a different result would have occurred. And the defendant will not be able to show a reasonable possibility does exist a different result would have occurred. In such cases, whether the defendant is awarded a new trial depends on whether he or the State bears the burden on appeal.

With that said, we turn to the evidence in this case. We note that to prove felony death by vehicle and felony serious injury by vehicle, the State was required to show (1) Defendant unintentionally caused the Ms. Pearce's death and Mr. Herring's serious injuries; (2) Defendant was engaged in the offense of impaired driving; and (3) Defendant's impairment was the proximate cause of the death and

serious injury.  *See* N.C.G.S. § 20-141.4(a1), (a3).

The issue regarding the BAC evidence does not concern the first element, whether Defendant caused the accident.  But still the evidence on this point was conflicting.  The testimonies of some witnesses and of the State's experts suggest Defendant's unsafe driving was a cause of the accident by unsafely moving into Ms. King's lane.  But the testimonies of Defendant and his expert suggest Defendant safely moved into Ms. King's lane with the collision occurring when Ms. King rear-ended Defendant while speeding.  The jury, though, necessarily believed the State's witnesses and determined Defendant's unsafe driving was a cause of the accident.

Defendant, though, argues he is entitled to a new trial because of the improper evidence tending to show he was impaired when he caused the accident.  Having determined the BAC evidence was improperly admitted, we must determine whether the State met its burden of showing no reasonable possibility exists the jury would have reached a different result but for the admission of the BAC evidence.  That is, we must determine whether the State has shown no reasonable possibility the jury would not have convicted Defendant of the three "impaired" crimes based on the strength of the State's non-BAC evidence tending to show Defendant was "under the influence of an impairing substance."  If so, the State would have met its burden of showing the surrogate BAC testimony was harmless beyond a reasonable doubt.  This *other* evidence heard by the jury concerning Defendant's impairment was as follows:

Ms. King (whose vehicle Defendant struck) testified seeing Defendant driving

"a little erratically" just prior to the collision.

A paramedic who assessed Defendant at the scene of the accident, testified that Defendant responded "no" when asked if he had been drinking. The paramedic, though, also observed that Defendant "would look down to the right, away from me," avoiding eye contact, when answering his questions.

A responding State trooper at the scene testified he noticed "an odor of alcohol coming from [Defendant]" as he escorted Defendant to the EMS vehicle. The trooper further observed Defendant had an "uneven gait," "was swaying back and forth[,] and appeared to be impaired." While both were at the EMS vehicle together, the trooper noticed Defendant had "red glassy eyes, [and] the odor of alcohol coming from his breath." Additionally, the trooper observed an "open container" of alcohol in Defendant's vehicle.

Another trooper responding to the scene observed Defendant was "agitated," appeared to be "angry[,]" had a "strong odor of alcohol coming from him[,]" and had "red and glassy" eyes. Defendant admitted to this trooper he had been drinking but insisted he had stopped drinking six hours prior to the accident. Defendant, however, provided two samples on the portable breath test and "[b]oth were positive for alcohol." The trooper essentially testified his opinion Defendant was under the influence of alcohol, stating "Defendant had consumed a sufficient quantity of an impairing substance to appreciably impair his mental and physical faculties." Later, at the hospital, the trooper observed Defendant was "slurring his speech at times."

The troopers testified Defendant *twice* displayed *six out of six* impairment clues on the horizontal gaze nystagmus test ("HGN"), once at the accident scene and a second time at the hospital. Also at the scene, when asked to count backwards from 32 to 14, Defendant skipped two numbers.

Defendant presented evidence to show he was not impaired, which can be summarized as follows: The mother of Defendant's son testified she saw Defendant while he was getting ready to take their son to therapy on the morning of the accident. After Defendant returned, prior to the accident, the mother did not smell any alcohol on him and "thought it was a regular day." This testimony, however, *bolsters* a finding the alcohol on Defendant's breath at the accident scene was the result of Defendant drinking *just prior* to the accident rather than six hours earlier. Defendant's other witness testified he saw Defendant at a birthday party the night before the accident and that Defendant was not impaired when leaving the party.

In sum, the State's evidence and Defendant's evidence both suggest Defendant had been drinking while driving his vehicle just prior to the accident. The mother of his child did not smell alcohol on Defendant's breath shortly before the accident; Defendant, however, did exhibit a strong odor of alcohol at the accident scene; there was an open container of alcohol in Defendant's vehicle; Defendant was driving erratically just prior to the accident; Defendant's unsafe driving caused the accident; Defendant had slurred speech and walked with an uneven gait; Defendant's eyes were glassy; Defendant demonstrated all six clues both times he took the HGN test;

and Defendant exhibited an agitated, angry demeanor at the accident scene.

Defendant suggests, though, a reasonable possibility still exists that at least one juror would have had reasonable doubt of Defendant's impairment, but for the improper BAC evidence. In other words, that at least one juror would have found the testimonies of the State's witnesses "less persuasive had the erroneous [BAC] evidence been . . . excluded." *Pabon*, 380 N.C. at 256 (ellipses in original). However, our case law suggests otherwise.

For instance, in 2022, our Court held the improper admission of evidence showing a defendant's high BAC was harmless beyond a reasonable doubt where officers had testified that Defendant smelled of alcohol, seemed impaired, and had manifested all six clues of impairment when administered the HGN test. *State v. Kitchen*, 283 N.C. App. 282, 293–94 (2022).

Five years earlier, in 2017, our Court held there was "no reasonable possibility that the jury would have reached a different result" concerning the defendant's impairment had they not heard expert testimony regarding his BAC, based on the other evidence of his impairment, including the testimonies of officers on the scene concerning his condition, and his failure of on-site impairment tests. *State v. Babich*, 252 N.C. App. 165, 172–73 (2017).

In *Babich*, we relied on a 2004 case where we held the defendant had failed to show the admission of BAC evidence was prejudicial where:

> there was evidence [a trooper] smelled an odor of alcohol

on defendant's person at the accident scene, that defendant needed assistance with walking to the patrol car, that defendant had difficulty writing his statement on the appropriate lines, that defendant had a "blank face," and that defendant did not perform satisfactorily on field sobriety tests administered by [the trooper]. Further, [the trooper] gave his opinion that defendant "had consumed a sufficient amount of alcohol to impair both his mental and physical faculties to such an extent that appreciable impairment of either or both [of] his faculties was evident."

*State v. Taylor*, 165 N.C. App. 750, 758 (2004).

In 2014, we held "no reasonable possibility" existed that the results of a trial would have been different, but for improperly admitted BAC evidence, based on the other evidence of defendant's impairment. *State v. Hawk*, 236 N.C. App. 177, 181 (2014).[1]

In other cases, where we held the admission of improper BAC evidence constituted reversible error, the other evidence was quite equivocal or non-existent that the defendant in each case was impaired. *See, e.g., State v. Scott*, 278 N.C. App. 354, 358 (2021); *State v. Hayes*, 256 N.C. App. 559, 564 (2017) (distinguishing the facts from those in *Babich*); *State v. Davis,* 208 N.C. App. 26, 39 (2010) (evidence that defendant caused an accident *alone* is not enough to render improperly admitted BAC evidence harmless).

---

[1] In *Babich*, *Taylor*, and *Hawk*, it was the defendant who had the burden to show a reasonable possibility that a different result would have occurred. And it would have been enough in those cases for our Court to merely hold that the defendant in each case failed in its burden. However, in those cases, we went further, concluding that "no reasonable possibility" existed a different result would have occurred, which is the State's burden for preserved, constitutional errors.

Accordingly, based on our case law, we must conclude the State has met its burden of showing no reasonable possibility a different result would have occurred but for the improperly admitted BAC testimony and, therefore, has met its burden of showing the testimony was harmless beyond a reasonable doubt.

## B. Plain Error Argument

In his second argument on appeal, Defendant contends the trial court plainly erred by not instructing the jury on the intervening negligence of Ms. King. Specifically, Defendant points to the evidence that Ms. King was driving negligently and that this evidence was an intervening event which caused the accident. We agree with the State that the evidence does not show that any negligence by Ms. King caused a "break in the causal chain" regarding Defendant's negligence. *See State v. Hollingsworth*, 77 N.C. App. 36, 39 (1985). In any event, we conclude Defendant has failed in meeting his burden of demonstrating that, assuming the trial court erred by failing to give such instruction, the error had a *probable* impact on the jury's verdict. *State v. Reber*, 386 N.C. 153, 158 (2024).

## C. Motion to Dismiss

Lastly, Defendant contends the trial court erred by denying his motion to dismiss the felony charges, contending there lacked evidence that any impairment was a proximate cause of the accident. However, again, we agree with the State that the evidence, when viewed in the light most favorable to the State, was sufficient for a jury to infer that Defendant was impaired and that his impairment proximately

caused him to collide with Ms. King's vehicle, resulting in Ms. Pearce's death and Mr. Herring's serious injuries. *See State v. Powell*, 299 N.C. 95, 99 (1980).

## III.  Conclusion

While we agree with Defendant his constitutional rights were violated by the admission of a surrogate expert's testimony concerning his BAC, we conclude the error was harmless beyond a reasonable doubt.  Concerning Defendant's other arguments, we conclude the trial court did not reversibly err.  Accordingly, we conclude Defendant received a fair trial, free of reversible error.

NO ERROR.

Judge GRIFFIN concurs.

Judge FLOOD concurs in result only.